JAMES J. SCANLAN, Respondent, v. J. CRAWSHAW, Appellant.

February 26, 1878.

1. A charter, granted under a law which provides that, where no period is limited in its charter, every corporation shall have succession for twenty years, contained a provision that the corporation and its successors "shall have perpetual succession." *Held*, that no measure of duration is intended by the word "perpetual," as thus used, but only unbroken continuity; and that, as no period was limited in the charter, the corporation ceased to exist at the expiration of twenty years.

2. An order of execution against a stockholder, under the provisions of the statute, is a nullity if the corporation had ceased to exist when the judgment against it was rendered.

APPEAL from St. Louis Circuit Court.

*Reversed and dismissed.*

LUCIEN EATON, for appellant.

BROADHEAD, OVERALL & BROADHEAD, for respondent.

LEWIS, P. J., delivered the opinion of the court.

By an act of the General Assembly, approved Feb. 12, 1853, the Masonic Hall Association was incorporated. An amendatory act was passed Nov. 14, 1857, containing nothing material to the subject of the present controversy. On June 8, 1876, the plaintiff obtained a judgment against the corporation, in the St. Louis Circuit Court, for $11,769.05. An execution having been returned *nulla bona*, the plaintiff proceeded in due form, under Wagner's Statutes, 291, sec. 13, to procure an order for execution against the appellant herein, as a stockholder in the corporation. On June 25, 1877, the court found, upon the issues joined, that the appellant was a stockholder to the extent of thirteen shares, at $20 each, fully paid, and ordered execution to issue against him for $260.

It is contended for appellant, that, when the judgment was rendered against the Masonic Hall Association, the corporation had ceased to exist. If this be true, the judgment was a nullity, and the subsequent proceedings were void.

When the charter was enacted, the general law of corporations provided thus : " Every corporation, as such, has power, first, to have succession by its corporate name for the period limited in its charter, and when no period is limited, for twenty years." Rev. Stat. 1845, p. 231, sec. 1. From this it results that if no period was limited in the charter of the Masonic Hall Association, its corporate existence ceased at the expiration of twenty years from its creation, or on Feb. 12, 1873, — nearly three years before the rendition of the judgment.

The only provision in the charter which can determine its intended duration is the following : —

" Sec. 1. That John D. Daggett, * * * and their associates and successors in office, shall be, and they are hereby, created a body politic and corporate, by the name and style of the ' Masonic Hall Association,' with a capital stock of fifty thousand dollars, which may be increased, at the will of the stockholders, to any amount not exceeding two hundred thousand dollars, in shares of twenty dollars each ; by which name they and their successors shall have perpetual succession, and are made capable in law and equity of acquiring and holding any and every kind of property whatever, for the purpose of building a masonic hall in the city of St. Louis, and the same to sell or otherwise dispose of ; of contracting and being contracted with ; of suing and being sued ; of defending and being defended against in all courts and places whatsoever, in all manner of actions ; and may have a common seal, and the same to alter or change at pleasure."

The respondent here finds in the words " shall have perpetual succession " an exclusion of the twenty-year limitation in the general law.    He holds that " perpetual " is an equivalent of eternal ; so that the succession (the corporate existence necessarily concurring) must run on forever.    If his premises be correct, the conclusion is unavoidable.    It would be vain to argue that in an eternal duration " no

period is limited," and that, therefore, the statutory limitation takes effect. For the answer would be that the charter manifestly intends to supersede any and every limit of time, however directed elsewhere. If it be said that an everlasting existence is repugnant to the will of the Legislature, as declared in repeated revisions of the General Statutes, the answer will be that the special must always prevail over the general law, which it repeals by implication.

The appellant claims, on the other hand, that by the term " perpetual succession " no measure of duration is intended, but only unbroken continuity, whether for a greater or less duration ; that, therefore, no period is limited in the charter, and the twenty-year rule prevails.

As is usual in controversies of interpretation, the difference of opinion arises from a dissimilarity of verbal definitions. What does " perpetual " mean? Webster says : " 1. Never ceasing ; continuing forever in future time ; destined to be eternal; as, a *perpetual* covenant, a *perpetual* statute. 2. Continuing or continued without intermission ; uninterrupted ; as, a *perpetual* stream, the *perpetual* action of the heart and arteries." Here are two classes of definitions, which seem to differ precisely as the interpretations differ on the two sides, respectively, of the present controversy. The first is favorable to the respondent's interpretation of the charter ; since eternal duration is necessarily understood of a perpetual covenant. The second as clearly sustains the appellant's interpretation ; since, however uninterrupted, there cannot be an everlasting action of the heart and arteries. It appears, then, that our choice between these two classes of definitions must be governed by the subject to which the adjective is applied. Thus, a perpetual covenant is an eternal covenant. But a perpetual stream is not an eternal stream ; it is only an uninterrupted one so long as it may last. An illustration may be found in the application of the familiar term, " perpetual motion." Scientists have never required of the seekers after that

chimera that the movement, when established, should continue forever. The inevitable decay of all earthly materials would preclude that. They demand only that the motion, for the time being, should not be interrupted by the use or exhaustion of its impelling force. Such a consummation, as all agree, would be perpetual motion.

This test of application to the subject-matter being once adopted, there can be little difficulty in discovering the true interpretation here. If the charter had declared itself a perpetual charter, or if it had said that the corporation should have a perpetual existence, or perpetual duration, there could be no question that it should last forever. But if established usage among law-writers, courts of justice, and legislative bodies, from time immemorial, is entitled to a controlling weight, the expression " perpetual succession," in connection with corporate institutions, has no reference at all to their terms of duration.

A late elementary work, of standard excellence, says : " The incident or capacity of perpetual succession  *   *   * is sometimes expressed by the term ' immortality ; ' which, however, is not strictly correct, as applicable to corporations ; as perpetual succession only means that they may continue, and rights and interests therein be transferred in succession, for an indefinite time, or so long as the corporation may legally exist. But private corporations in this country are usually limited, as to the period of their continuance, by the statutes under which they are constituted," etc. Field on Corp., sec. 57. Here is a clear separation of the incident of perpetual succession from that of the period of their continuance ; the first pertaining to any duration, long or short, and the second depending on " the statutes under which they are constituted." In the next section the author says : " Perpetual succession, as we have seen, is that continuous existence which enables a corporation to manage its affairs and hold property without the necessity of perpetual conveyances for the purpose of transmitting it. By reason of

this quality, this ideal and artificial person remains, in its legal entity and personality, the same, though frequent changes may be made of its members; and although all of its members may be changed, and new ones substituted for the old, it still legally remains one person."

Another high elementary authority says: "The *immortality* of a corporation means only its capacity to take in perpetual succession as long as the corporation exists; so far is it from being literally true that a corporation is immortal, many corporations of recent creation are limited in their duration to a certain number of years." Ang. & Ames on Corp., sec. 8.

The subject is similarly treated by all the elementary writers. It thus appears that the attributes of immortality and perpetual succession, so called, are understood to obtain only so long as the duration of the corporation will allow. In other words, they do not control, but are subject to such provisions elsewhere as establish, the duration.

If further proof be wanting to show the sense in which the words "perpetual succession" were used in the charter under consideration, we have abundant historical evidence of a most satisfactory kind, supplied by the industry of appellant's counsel. We are furnished with references to twenty-four acts of incorporation, passed by our General Assembly in the years 1853 and 1857, in each of which perpetual succession is bestowed, while the existence of the corporation is limited to a term of years. As it is impossible to suppose that our law-makers deliberately employed contradictory terms in every one of so many enactments, we must infer that they did not intend, in the words "perpetual succession," to imply infinite duration. No other legislation appearing in which the words were unquestionably used in such a sense, the conviction is irresistible that the same legislative body did not mean so to use them in the charter before us.

We conclude that, in the charter of the Masonic Hall

Association, enacted Feb. 12, 1853, no period is limited. It results that its period was limited by the general law, at twenty years, and the corporation ceased to exist Feb. 12, 1873. A number of other questions raised by the record have been discussed with much ability and research by the counsel on either side. But the case being fully disposed of in the views above presented, it becomes unnecessary to pass upon them. All the judges concurring, the judgment is reversed, and the motion for execution is dismissed.