Macfarlane, J.
This is a proceeding by information in the nature of quo warranto, brought by the attorney general, at his own relation, against M. J. Payne and others, as officers of the Kansas City Gaslight and Coke Company, by which they are charged with usurping the rights, privileges and franchises of a corporation.
The information sets out in full an act of the general assembly of the state entitled “An Act to incorporate the Kansas City Gaslight and Coke Company” approved February 20, 1865. (Laws 1864-5, p. 237). Sections 1, 2, 8 and 9 of the aet are as follows:
“Sec. 1. That M. J. Payne, DavidE. James, and R. T. Yan Horn, their associates, heirs and assigns be and they are hereby created a body corporate and politic, under the name and style of ‘The Kansas City Gaslight and Coke Company,’ and by that name shall have perpetual succession, may sue and be sued, plead and be impleaded, may have and use a common seal, may acquire and dispose of personal and real estate, and transact any and all business in accordance with the provisions of this act.
“Sec. 2. This corporation shall have the exclusive right and power of manufacturing gas and coke from any substance whatever, for and within the city of Kansas, Jackson county, and state of Missouri, for the term of thirty years (30); and said company is hereby exclusively authorized and permitted to erect buildings and apparatus for said purpose, and to lay pipes anywhere within said City of Kansas; provided,, *476 said-company shall commence said gas buildings within eighteen months from the passage of this act, and complete the same within three years therefrom.”
“Sec. 8. The said company is hereby authorized to purchase, lease and hold any quantity of land known as coal or oil lands, in the counties of Jackson, Cass, Johnson, Lafayette and Ray counties, and may sell and convey the same at pleasure, but shall not own at any one time more than an amount equal to -(640) six hundred and forty acres in each county; the same company may mine and dig said lands for coal and bore the same for oil, and may manufacture and dispose of the products of any such coal or oil lands, in such manner as the said company may determine; provided, nothing in this section shall be so construed as to prevent any other corporation, or person or persons, from acquiring lands and mining for coal or boring for oil in said counties.
“Sec. 9. All acts and parts of acts inconsistent or in conflict with this act are hereby repealed.”
The other sections provide for the organization of the corporation, the amount of its capital stock, its division into shares, and the business management of the corporation, and are in no way involved in this inquiry.
It is charged by the information that under this act the corporation was organized, and, until February 20, 1895, did business in Kansas City in manufacturing gas and supplying it to the city and to private citizens for illuminating purposes; that on said last named date all the rights, privileges and franchises of said corporation ceased and expired by limitation, yet respondents from and after said date assumed to act as officers of said corporation and have usurped, and do usurp the privileges, liberties and franchises conferred on said corporation, and. assert and claim in *477 behalf of said corporation that it has by virtue of said act perpetual existence.
Respondents in answer to the information admit that they are acting as -officers and directors of said corporation under the act set out in the information, and affirmatively assert that it has perpetual existence, and that they are not, therefore, usurping the rights and franchises of the corporation, but are lawfully acting under authority granted by said act of incorporation. A reply by relator put in issue the corporate existence of said gaslight and coke company.
Some evidence was taken by the parties in support of issues we do not deem it necessary to consider.
The only question presented by the pleadings which we deem it necessary to discuss is, whether, under the act incorporating the Kansas City Gaslight and Coke Company, its corporate rights and powers ceased at the expiration of thirty years after the act became a law. The question is one of vast importance both to the corporation and the citizens of Kansas City. The corporation has expended, and now has invested, a large amount of money in plants, mains and other property, which will necessarily be much depreciated in value should the property go into the hands of the stockholders or trustees for the settlement of the corporate business. The citizens, and city itself, have also great interest in securing adequate light at reasonable rates. These considerations, however, can not affect the legal principles involved.
At the time the act in question was passed the general law of the state concerning corporations declared: “Every corporation, as such, has power to have succession by its corporate name for the period limited in its charter, and when no period is limited, for twenty years.’7 The first section of the act incorporating the said gaslight and coke company granted to it “per *478 petual succession.” The second section grants to the corporation the “exclusive right and power of manufacturing gas and coke from any substance whatever for and within the City of Kansas, Jackson county,” for the term of thirty years.
It is insisted by respondents that the grant of “perpetual succession,” without other limiting words, gave to the corporation the right to perpetual existence, and that the limitation of thirty years, contained in section two, was not intended to limit the duration of corporate existence, but of the exclusive rights specified.
The general rule applied in the construction of charters secured under special legislative grants requires all doubts to be solved in favor of the state or general public, and against the state’s grantee. “In the construction of a charter, to be in doubt is to be resolved, and every resolution which springs from doubt is against the corporation” and in favor of the public. Black v. Canal Co., 24 N. J. Eq. 474.
It has been truly said that “all experience teaches that public rights are yielded to private interests with sufficient alacrity.” Townsend v. Brown, 4 Zab. 87. The same thought is expressed by Tindal, C. J., in this language: “And it is to be observed that the language of these acts of parliament is to be treated as the language of the promoters of them. They ask the legislature to confer great privileges upon them, and profess to give the public certain advantages in return. Acts passed under such circumstances should be construed strictly against the parties obtaining them, but liberally in favor of the public.” Parker v. Railroad, 7 M. & G. 288; Central Trans. Co. v. Pullman Car Co., 139 U. S. 49; Carroll v. Campbell, 108 Mo. 550.
The rule for the construction of grants and privileges by the state to individuals, under corporate names, differs, therefore, from that applied to contracts *479 between individuals. In the latter the language must be taken most favorably against the party using it. In the former the words are construed most strongly against those to whom the rights are granted. The reason for the rule is the same in each case. Such words are presumed to have been selected by the party using them as would best subserve their own interest and express their own intention.
If, then, there exists a fair doubt as to the intention of the legislature in respect to the duration of this corporation, the state must have the benefit of it.
It maybe said, also, that the policy of the state, as appears from its general legislation, is unfavorable to the unlimited duration of purely business corporations, and for that reason all doubt should be resolved against such an intention. Yet there is no doubt the legislature had the right to grant to a business corporation an indefinite existence, and if the language used in this charter is without doubt or ambiguity the express intention must control.
• The word perpetual, as used in the act, expressly qualifies the succession, and not the duration, of the corporate existence. In the connection used, does it imply that the legislature intended to grant the- corporation unlimited existence? The word itself does not necessarily so imply. It has more than one meaning, as “everlasting,” “continued,” “uninterrupted.” All lexicographers give these, or equivalent words, as proper definitions of the word “perpetual.”
The word “succession,” in its common legal use, denotes the devolution of title to property under the laws of descent and distribution. It is defined as “the coming in of another to take the property of one who dies without disposing of it by will.” Title to corporate property and franchises is held continuously and uninterruptedly by and in the name of the corporation, *480 and not in the names of the various stockholders. There is no devolution of title in case of the death of a member or stockholder. The succession is not interrupted, but continues in the corporation. The succession is continuous during the life of the corporation, whether it be for years or for an unlimited time.
Blackstone says that the very end of a corporation is “to have perpetual succession,” “for there can not be a succession forever without an incorporation.” 1 Cooley’s Blk. Com. 475. Chancellor Kent says: “A corporation is a franchise possessed by one or more individuals, who subsist as a body politic under a special denomination, * * * with the capacity of perpetual succession and of acting in several' respects, however numerous the association may be, as a single individual.” 2 Kent’s Com. 268.
The duration of a corporation, though unlimited by its charter-, and though it is given the capacity to have perpetual succession, can not be regarded as everlasting within the general and common meaning of that word. It may be dissolved and cease to exist for want of members, by voluntary surrender of franchises, forfeiture by misuser, etc. Ang. & Ames on Corp. [11 Ed.], sec. 8.
It will be found, by reference to all the authorities, that a grant of capacity to take in- “perpetual succession” refers father to the continued legal identity and succession than to continuous or perpetual succession. 1 Blk. Com., supra; 2 Kent’s Com., supra; 1 Dill. Munic. Corp., sec. 18; Dartmouth College case, 4 Wheat. 636; Field on Corp., secs. 1 and 71.
“The immortality of a corporation means only its capacity to take in- perpetual succession as long as the corporation exists; so far is it from being literally true that a corporation is immortal, many corporations of *481 recent creation are limited in their duration to a certain number of years.” Ang. & Ames on Corp., sec. 8.
Aggregate corporations are “immortal, because, in the judgment of law, they never die; yet, in point of fact, like natural persons, they are subject to death and dissolution in various ways. * * * Its immortality, therefore, means only its capacity to take and to act in perpetual succession so long as the corporation exists.” Potter on Corp., sec. 2.
“When it is said that corporations have perpetual succession, it is meant that they have continuity only during any limited period of time which may be fixed by the law of their creation; * * * in the proper and more restricted sense the immortality of a corporation means only its capacity to take in perpetual succession so long as it exists.” Spelling, Priv. Corp., sec. 4.
Chancellor Kent says: “It is sometimes, said that a corporation is an immortal as well as an invisible and intangible being. But the immortality of a corporation means only its capacity to take in perpetual succession so long as the corporation exists.” 2 Kent, supra.
Thus it appears that the words “perpetual succession” as used in charters generally mean nothing more than that the corporation should have continuous and uninterrupted succession so long, as it should continue to exist as a corporation, and are not intended to define its duration. If no limit is fixed to its existence then it would have an indefinite or unlimited duration. Morawetz on Corp., see. 411.
The general law in force at the time this special act was passed declared that every corporation should have the capacity of succession by its corporate name for the period limited in its charter, and when no *482 period was limited, for twenty years. R. S. 1855, sec. 1, p. 369.
It is claimed by respondents that this provision of the general law is inconsistent with this special act of incorporation and was expressly repealed by the ninth section. But if, as we have seen to be the case, the words “perpetual succession” were intended to imply nothing more than' a continuous succession during the existence of the corporation, then there is no inconsistency. The general law must be read into and made a part of the special act. The general law must be taken as declaring the intent of the legislature in respect to the duration of the corporation. As is said: “Statutes granting such special privileges are, in one sense, to be read together and construed in conformity with general statutes laying down universal rules applicable to the class of corporations to which the one claiming under the special act belongs.” Endlich, Interpretation of Statutes, sec. 56.
Reading the general law and the first section of the special, act together, the duration of the corporate existence of the gaslight company is clearly fixed at twenty years. It does not seem that a doubt of the legislative intent can be raised, but if one should exist it must be resolved against the corporation. '
The language employed was the common form then used in special acts granting the capacity of succession. Many acts passed about that period will be found to contain a grant of perpetual succession though the corporate existence is, in the same act, limited to a definite period. This clearly implies that the legislature did not intend to use the word “perpetual” in the sense of everlasting, or as qualifying the time the corporation should exist. Scanlan v. Crawshaw, 5 Mo. App. 341.
If the promoters intended to incorporate for an unlimited period the act could have been easily drawn *483 so as to express that intention, so clearly that there could be no doubt. "We are unwilling to give the words employed a meaning broader than that generally given them in the connection in which they are used.
While convinced, we have hesitated to adopt this construction of the act in view of a contrary conclusion reached in the case of Fairchild v. Masonic Hall Ass’n, 71 Mo. 526. We are of the opinion, however, after careful consideration, that greater significance should be given the provisions of the general law, the policy of the state as drawn therefrom, and the general import of the words used, than was accorded to- them in the Fairchild case.
We are cited to the case of State ex rel. v. Stormont, 24 Kan. 686, as supporting the conclusion in that case. The general laws of Kansas provided that every corporation should have succession by its corporate name “for the period limited in its charter, and when no period is limited, for ten years.” The special act in question gave the corporation thereby created “perpet-ual succession forever.” The court held the charter to be unlimited in duration. Comment is unnecessary in order to show the significance the word “forever” might have on the words “perpetual succession” in 'determining-the intention of the legislature. The special acts there and here in question are too dissimilar to give any weight to that case as an authority in support of the construction insisted upon by respondents.
We do not think that section 2 of the act shows an intention by the legislature to give the corporation an unlimited period of existence. It is true it grants an exclusive right for thirty years. Without that provision it had only a right in common with others for twenty years. A twofold purpose was intended: First, to qualify the grant and make it exclusive; and, second, to extend the time the corporation should exist from *484 twenty to thirty years. If it had been the intention to grant a perpetual common right after the termination of the exclusive right, it certainly could and would have done so.
It will be observed, further, that a strict and literal reading of the section would only give the right to manufacture gas and coke for thirty years. The exclusive right to erect buildings and apparatus, and lay pipes anywhere in Kansas City would not be extended to thirty years. The distinction could not have been intended. Thirty years was evidently intended to fix the period of corporate existence during all which time the rights and privileges granted were made exclusive. There is no provision contained in section 8 which is so inconsistent with a limitation of corporate life to thirty years as would indicate a contrary intent.
It follows that the corporate existence of the said Kansas City Graslight and Coke Company has expired and ceased to exist, and respondents are usurping the rights, privileges and franchises thereby conferred. Judgment of ouster is therefore entered, and writ awarded.
All the judges concur.