THE STATE ex rel. ALLISON v. HANNIBAL & RALLS COUNTY GRAVEL ROAD COMPANY, *Appellant*.

Division Two, March 23, 1897.

1. **Roads and Highways**: TURNPIKES. A turnpike is a public highway, maintained by tolls, whereas an ordinary highway is maintained by taxation.

2. **Corporation**: LIMITATIONS IN CHARTER: PERPETUAL SUCCESSION: TURNPIKE ROAD. A turnpike road company, organized under the law of 1851, limited by said act to thirty years, and by the act of 1857 given, by name, "perpetual succession," has only an easement in a public highway for thirty years after the act of 1857; and at the end of that time it could no longer collect tolls nor make a deed of its pikes or plank roads to another company, because it had no legal existence. It had no fee simple right to the land, but a mere easement, which was given it in the first place by the law, and by the consent of the county court, and which terminated with its charter; and in attempting to collect tolls thereafter it maintained a public nuisance.

*Appeal from Pike Circuit Court.*—HON. REUBEN F. ROY, Judge.

AFFIRMED.

George A. Mahan for appellant.

(1) The Hannibal, Ralls County & Paris Plank Road Company was incorporated under an "Act to authorize the formation of associations to construct plank roads and macadamized roads." Session Acts 1851, page 259. (2) When the Hannibal, Ralls

County & Paris Plank Road Company appropriated and located its plank road on that part of the old county and State road lying in Ralls county, now in controversy, and the Ralls county court consented such road "became the property of such company." The word property is *nomen generalissimum*, and extends to every species of valuable right and interest, including real and personal property, easements, franchises, and other incorporeal hereditaments. 19 Am. and Eng. Ency. of Law, 285; *Railroad Co. v. Railroad Co.*, 2 Gray, 35; Anderson's Dictionary of Law, 835; *Tripp v. Overocker,.* 7 Colo. 74. And this is true, although the corporate life of the Plank Road Company was limited to thirty years. *Nicoll v. Railroad Co.*, 12 N. Y. 121; *Yates v. Van de Bogert*, 56 N. Y. 526; *In re Cable Co.*, 109 N. Y. 32; *Fletcher v. Peck*, 6 Cranch, 137; *Railroad v. Casey*, 26 Pa. St. 325. (3) Grants similar to the one in question have uniformly been held to vest the grantee with an interest in perpetuity for the purposes named in such grant. *Railroad Co. v. Kerr*, 72 N. Y. 330; *Milhau v. Sharp*, 27 N. Y. 611; *Mayor v. Railroad*, 32 N. Y. 261; *Davis v. Mayor of New York*, 14 N. Y. 506. (4) It is well settled by authority that such a right or grant constitutes property within the usual and common signification of that word. *Railroad v. Kerr*, 72 N. Y. 330; *People v. Sturtevant*, 9 N. Y. 263; *Hovelman v. Railroad Co.*, 79 Mo. 632. (5) The right to collect toll was a part of the franchise of the Hannibal, Ralls County & Paris Plank Road Company, and that right passed with its tangible property to its grantee, the Hannibal, Ralls County & Monroe Plank Road Company. *Gue v. Tide Water Canal Co.*, 24 How. 257; *People v. O'Brien*, 7 Am. Rep. 701; *Railroad Co. v. Commissioners*, 112 U. S. 609; *Railroad Co. v. Delamore*, 114 U. S. 501; *Morgan v. Louisiana*, 93 U. S. 223. (6) The.

legislature of Missouri has completely cured all defects. On the seventeenth of February, 1857, the General Assembly passed a special act, duly incorporating the Hannibal, Ralls & Monroe Plank Road Company, "as such to have perpetual succession." Acts 1856 and 1857, p. 435; Acts 1855, sec. 3, p. 466. (7) The Monroe Plank Road Company on December 10, 1887, by deed conveyed all of its franchises and interests in the gravel road to appellant. Its right to do so at the time can not be questioned. *State ex rel. v. Gravel Road Co.*, 37 Mo. App. 505; *Tomlinson v. Branch*, 15 Wall. 460; *Humphreys v. Pegues*, 16 Wall. 244; *People v. Plank Road Co.*, 86 N. Y. 10. (8) It is admitted by the pleadings that appellant was, prior to 1882, duly incorporated under article 4, chapter 21, Revised Statutes of Missouri 1879. This chapter gives appellant full and unreserved powers to collect toll, and maintain, control and own a gravel road. The authority to construct a gravel road gave appellant the right to purchase one. *State ex rel. v. Gravel Road Co.*, 37 Mo. App. 505; Morawetz, Corp., sec. 372; *Branch v. Railroad*, 3 Woods, 481; *Branch v. Jessup*, 106 U. S. 468; *Stockton v. R. R. Co.*, 51 Col. 328. (9) The appellant's roadbed could not under the pleadings and evidence in this case "revert to and become vested in the public as an easement." Property rights can not be confiscated by the State or prevented from devolving according to the ordinary rules of equity and law. Morawetz, Private Corporations, secs. 661, 662; *Newburgh v. Plank Road Co.*, 86 N. Y. 9.

*Elijah Robinson* and *G. W. Whitecotton* for respondent.

(1) By the provisions of the act of February 27, 1851, as well as by the tenure of its articles of associa-

tion, the corporate existence, and all powers and franchises of the Hannibal, Ralls County & Paris Plank Road Company expired on the fifth day of May, 1882, that being thirty years from the date said company was incorporated. Acts 1850, 1851, sec. 2, page 259. (2) The Hannibal, Ralls County & Paris Plank Road Company could not use the public road without the consent of the county court. Acts 1850, 1851, sec. 6, page 259. The county court could not confer on. said company the right to use the public road for any other purpose than that set forth in said act under which said company was organized; and could not confer that right for any longer period than said company was authorized by its charter. (3) The deed of trust to Payne and Hawes, and their deed to the purchasers at their sale conveyed no more than the original corporation possessed, if that much. The purchasers under said trustees' sale, if they acquired the franchise, acquired it for no longer period than that for which it was originally created, and it expired in their hands just as it would have expired in the hands of the original corporation. (4) The Hannibal, Ralls & Monroe Plank Road Company did not by the act of 1857 and 1866, acquire any greater rights than the Hannibal, Ralls County & Paris Plank Road Company acquired by its incorporation under the act of 1851. The act of 1857 and the act of 1866 conferred on the Hannibal, Ralls & Monroe Plank Road Company the same rights and privileges, and subjected it to the same liabilities and restrictions as the old company. The meaning of the word "perpetual succession" in the act of 1857, is limited and explained by what follows. The whole act must be considered to ascertain the legislative intent. *Scanlan v. Crawshaw*, 5 Mo. App. 337; *Fairchild v. Masonic Hall Ass'n*, 71 Mo. 526. (5) The roadbed in question was a public high-

way, established by public authority for public use, and is to be regarded as a public easement, and not as private property. The right to travel over the road was an easement vested in the public, and when the charter expired, this easement continued, disburdened of tolls, but otherwise unaffected. Angell on Highways, sec. 8, p. 8, and note; and sec. 14, p. 11; *State v Wilkerson*, 16 Pick. 175; *Benedict v. Gait*, 3 Barb. 469; *Davis v. Mayor of N. Y.*, 14 N. Y. 516. (6) After the expiration of the charter of the Hannibal, Ralls & Monroe Plank Road Company, the board of directors of said company as trustees for the stockholders, could transfer the toll houses, shovels, scrapers, wagons, horses, etc., of said company but could not transfer the roadbed, because that was not vested in said company, but in the public.

GANTT, P. J.—On the fifth day of May, 1852, a corporation under the name of "Hannibal, Ralls County & Paris Plank Road Company" was organized and articles of incorporation filed with the recorder of deeds of Ralls county in pursuance of an act of the legislature of Missouri approved February 27, 1851. Laws of Mo. 1850, 1851, p. 259.

Section 2 of said act required that the articles of any corporation formed under said act should state "the term of years to which the existence of the association shall be limited, which shall not exceed thirty." The articles of association of the "Hannibal, Ralls County & Paris Plank Road Company" provided that said corporation "is limited to thirty years."

The purpose of said corporation was to build a plank road, and by section 6 of the act under which it was formed it was authorized to locate its road on any public road provided it first secured the consent of the

county court of the county in which such public road was located.    Section 6 of said act is in these words: "Sec. 6.    The directors of said association shall proceed to survey and locate said road and may with the consent of the county court of the proper county locate it over and upon any State or county road or highway and thereupon such State or county road or highway or such portion thereof as may be occupied and appropriated by said company shall become the property of said company for the purpose of making and maintaining said road and the gates and toll houses thereon. And the county courts of the several counties of this State are hereby authorized to consent to the appropriation and occupation of any such State or county road over and upon which any such company may locate any such road."

On the seventh day of July, 1852, the county court of Ralls county by order entered of record, authorized said company to locate its said road "on so much of the State and county roads between Hannibal and Paris as lies in Ralls county."    On October 5, 1852, a similar order was made by said county court as to a certain other road known as the Bear Creek road.

Said plank road company had appointed a committee to procure the consent of said county court to the use of said public road, and after the aforesaid orders had been made, said committee reported to said company that such consent had been procured.    Said company thereupon built a road about thirteen miles in length, which was located substantially on the public roads which said county court had relinquished to its use as above stated.    At some points the track of the public road was departed from, either on account of bad location or to save distance.    However, the location of the plank road was substantially along the line

of the public road and the former practically took the place of the latter, because those portions of the public road not actually occupied by the plank road were abandoned, and the plank road became in fact the public road.

On the fourth day of March, 1854, the said plank road company made a deed of trust to G. B. Payne and G. A. Hawes (trustees), whereby it conveyed to said trustees its plank road and toll houses together with the appurtenances, rights and privileges connected with or growing out of said property, and also the stock of the said company and all tolls which might thereafter accrue, which conveyance was made to secure certain indebtedness in said deed mentioned.

On September 18, 1856, said trustees conveyed to Thos. Miller and certain other persons, the same property and rights conveyed to them by said deed of trust.

By an act passed by the legislature of this State, approved February 17, 1857, the said purchasers of said property, Thos. S. Miller and others, were declared a body corporate under the name of "Hannibal, Ralls & Monroe Plank Road Company."

By said act it is declared that said Thos. S. Miller and others are created a body corporate, *and as such to have perpetual succession*, to hold property, sue and be sued, etc.; but it is in said act further provided that said corporation thereby created, "shall have like powers, privileges, and franchises, *and be subject to like restrictions, in all respects, as if regularly incorporated under the act of February 27, 1851*." By the said act the said corporation thereby created was authorized to change the said road from a plank to a gravel road.

The stockholders of said Hannibal, Ralls & Monroe Plank Road Company failed to keep up the organization, and the legislature by an act approved March 19, 1866 (Session Act of 1865 and 1866, page 247) re-

cited the fact that the corporators had not elected a board of directors, and that the said company then had no legal existence, and substituted William Newland and others, in said act named, as directors, to all the rights, powers, privileges, and liabilities of said company, as recited in the act of February 17, 1857.

On the fifth day of June, 1882, the articles of association of the defendant were filed under the provisions of article 4, chapter 21, Revised Statutes 1879, and a certificate of corporate existence thereupon issued; and the corporation thus created at once took possession of eight miles of the old roadbed of the said Hannibal, Ralls & Monroe Plank Road Company, and has since collected tolls thereon.  ·

On the twelfth day of December, 1887, after the corporate existence of said Hannibal, Ralls & Monroe Plank Road Company had expired by limitation, William Bird, Nimrod Glasscock, W. P. Harrison, and A. R. Levering, assuming to act as directors of said company, made a deed to the defendant company, whereby, for a consideration of $1 and $2,600 stock in the defendant company, they undertook to convey to said defendants "the franchises" and about eight miles of the roadbed of the said Hannibal, Ralls & Monroe Plank Road Company.  This deed purported' to have been made in pursuance of a resolution of a majority of the stockholders of said Hannibal, Ralls & Monroe Plank Road Company, adopted May 22, 1882.

After the defendant company took possession of a portion of said roadbed, and began to collect tolls thereon, a *quo warranto* proceeding was begun in the name of the State *ex rel.* the prosecuting attorney of Ralls county, to forfeit the charter of said defendant, and especially to oust it of the franchise of collecting tolls on said old roadbed.

That case was tried in the circuit court of Pike

county, which held that the defendant had no right to collect tolls on said old roadbed, but that injunction and not *quo warranto*, was the proper remedy. The plaintiff in that case appealed to the St. Louis Court of Appeals, which affirmed the judgment of the lower court. (37 Mo. App. 505.) Thereupon this suit for injunction was brought by the State, acting through Mr. Allison, the prosecuting attorney of Ralls county, to enjoin said defendant from collecting tolls on said old roadbed. The finding and decree were in favor of the plaintiff and enjoined defendant from collecting tolls on said old road; and thereupon defendant appealed to the St. Louis Court of Appeals, which transferred the case to this court because the title to real estate was involved.

1.   This is a proceeding to enjoin the defendant from charging and taking tolls on a public highway, which the State insists has been disburdened of such tolls by reason of the expiration of the charter of the original incorporation, and because the present defendant has not obtained the consent of the county court to its appropriation of the highway which the State claims reverted to it discharged of any burden in the way of tolls.

The claim involves a judicial determination of the character of the association created May 5, 1852, under the act of February 27, 1851 (Laws of Missouri 1850, 1851, p. 259), and the length of its corporate life. The said plank road company was created for a public purpose, to wit, the building and maintaining a highway or turnpike road. In *Northern Bridge Company v. London Railway* (1840) 6 M. & W. 428, Lord Abinger defined "a turnpike road as one having tollgates or bars on it, which were originally called '*turns*' and were first constructed about the middle of the seventeenth century. The distinctive mark of a turnpike

road is, the right of turning back anyone who refuses to pay tolls." *Haight v. State*, 32 N. J. L. 449. Turnpike road is *nomen generalissimum*. It includes as well gravel and plank road companies, which have the right to collect tolls from persons passing over their road and enforce the collection by erecting turnpikes or gates or both to obstruct the passage till the tolls are paid.

By the seventeenth section of the act of 1851, Laws 1850, 1851, p. 262, the directors of a plank road organized thereunder had the right to erect tollgates at such points on their road as they deemed proper, and exact tolls from all persons traveling on such road at rates therein set forth. It can not be questioned that the original company was empowered to build and maintain a turnpike road, and that the law governing highways of that character apply to that enterprise.

Now, a turnpike is a highway differing neither in the responsibility for its proper maintenance nor in any other particular from an ordinary highway, save in the mode of constructing and maintaining it. An ordinary public road is maintained and repaired by taxes, a turnpike is supported and maintained by the tolls exacted.

A turnpike is regarded in law as a public easement and not as private property. Every traveler has the same right to use it, paying the toll established by law, as he wou d have to use any other highway. These principles are well established. *Com. v. Wilkinson*, 16 Pick. 175; *Craig v. People*, 47 Ill. 487.

The public character of the easement is made more manifest when the charter of such companies permits the condemnation of real estate in acquiring their right of way as was granted by the act of 1851, section 8, page 261. *Knox Co. v. Kennedy*, 92 Tenn. 1. And as if to emphasize this view it has often been ruled that when the charter permitted the use of an established

highway for a turnpike it imposed no additional burden upon the adjoining landowners by changing the highway into a toll road, on the principle that the character of the easement was not changed, the road remaining a public highway. *Carter v. Clark*, 89 Ind. 238; *Chagrin Falls & Cleveland Plank Road v. Cane*, 2 Ohio St. 419; *Panton Pike Co. v. Bishop*, 11 Vt. 198; *Callison v. Hedrick*, 15 Gratt. 244; *Douglas v. Boonsborough Turnpike Co.*, 22 Md. 219; *Wright v. Carter*, 27 N. J. L. 76; *Walker v. Caywood*, 31 N. Y. 51.

Notwithstanding the broad language of section 6 of the act of 1851, that the "State or county road or portion thereof as may be occupied and appropriated by said company *shall* become the property of said company," it is evident that only an easement was granted when we consider the qualifying words "for the purpose of making and maintaining said road and the gates and toll houses thereon." In other words, it was what may be denominated a qualified estate in the nature of a base fee for the use and purposes of the work.

The statute did not vest a fee simple in the right of way in the plank road company; it simply granted the company the right to maintain the public highway already acquired for public use, and did not attempt to convey a greater interest than the State or county already had, but the same right only, subject to the limitation that the State only conferred the right to take and maintain this highway and exact tolls for *thirty years*.

Having reached the conclusion that a turnpike is a public highway, that its right to appropriate the State or county road did not impose an additional burthen, it must be noted that the privilege of so using a State or county road was conditional upon the consent of the county court. No question of perpetuity

or perpetual succession can arise under the act of 1851. The franchise granted could not exceed thirty years and the articles of the Hannibal, Ralls County & Paris Plank Road Company expressly limited that association to thirty years.

But this company on March 4, 1854, conveyed its road and toll houses to trustees and these trustees in turn conveyed the same to Thomas S. Miller and certain other persons, and by an act of the General Assembly approved February 17, 1857, Thomas S. Miller and his associates were declared a body corporate under the name of Hannibal, Ralls & Monroe Plank Road Company. By the terms of that act these corporators are given *"perpetual succession"* but the act provides that the corporation thus created "shall have like powers, privileges and franchises and be subject *to like restrictions in all respects as if regularly incorporated under the act of February 17, 1857.*"

Counsel on both sides in the original briefs prepared for the St. Louis Court of Appeals, discussed at length the effect of the words "perpetual succession," but it is no longer contended by appellant since the decision in *State ex rel. v. Payne,* 129 Mo. 468, that these words have the effect of extending the life, so to speak, of the corporation beyond the period of thirty years to which the original charter was limited. These words "perpetual succession" imply nothing more than a continuous succession during the existence of the corporation as fixed by its charter, which in this case must have expired under any construction possible, on the seventeenth of February, 1887. The act of March 19, 1866, did not affect the limitation of the corporate existence, but merely enabled substituted corporators to exercise the rights conferred by the act of 1857.

But conceding that the charter of the new company must expire in thirty years, two views are taken as to

when the thirty years commences. Plaintiff insists it begins with the organization of the Hannibal, Ralls County & Paris Plank Road Company on May 5, 1852, and expired May 5, 1882. We think otherwise. The charter of the Hannibal, Ralls and Monroe Plank Road Company conferred upon it all the rights and privileges that it would have had if it had been organized under the act of 1851. If organized under that act its corporate franchise would not have expired until the expiration of thirty years from its incorporation. Moreover, there is nothing in the act of 1857 indicating an intention to limit it to the unexpired term of its predecessor. We think that the charter of the Hannibal, Ralls & Monroe Plank Road Company expired February 17, 1887.

Having reached this point, we are confronted with the question, what becomes of the turnpike or plank road after the franchise expires? We think that the weight of authority and sound reason concur in holding that upon the termination of the franchise the road remains as before a public highway, wholly free from the burden of tolls. Particularly is this true when, as under our statute, the turnpike company merely acquires an easement in the road during its charter life, and not a fee in the land on which the road is laid out. The easement in a turnpike as well as in an ordinary road is vested in the public and when the turnpike company's charter expires, its easement ceases, but the easement of the public continues until revoked by law. *State v. Maine,* 27 Conn. 641.

In *Pittsburgh, etc., R. R. v. Commonwealth,* 104 Pa. St. 583, the Supreme Court of Pennsylvania states the law in these words: "The question is, did the forfeiture of the charter of the turnpike company wholly destroy the character of the road as a public highway? The right of the company to take tolls was ended. Its

liability to keep the road in repair was terminated, yet the road as a public highway remained. No judgment or decree had destroyed its character as such. It had been dedicated to public use. The forfeiture of the charter of the turnpike company destroyed the rights of that corporation; yet the road still remained, in fact and in law, a public highway." *Craig v. People*, 47 Ill. 495. And in *McMullin v. Leitch*, 83 Cal. 239, it was held that the road becomes a public highway by dedication at the time of its construction subject to the right of the company to collect the tolls for the period prescribed by statute and at the termination of such period neither the company or stockholders have any interest in the road for which they are entitled to compensation. 27 Am. & Eng. Ency. of Law, 324, *et seq.*

Applying these principles to the facts in this case, it can not be doubted that the plank road in this case became disburthened of tolls on February 17, 1887, and reverted to the public as a public highway. The deed of December 12, 1887, from the Hannibal, Ralls & Monroe Plank Road Company was void, because there was no such corporation in existence at that date by the laws of this State. *Bradley v. Reppell*, 133 Mo. 545; *State ex rel. v. Payne*, 129 Mo. 468; and for the further reason that long before that deed was executed the franchises and roadbed which the deed purported to pass had become vested in the public free from any power of said defunct corporation to effect a transfer thereof.

While it seems to be conceded that this was unquestionably the case as to the old State and county road, yet a claim is made that certain portions of this roadbed had become the fee simple property of the turnpike company. As to this claim there is no evidence that either of the said turnpike companies ever acquired the fee simple to a single tract of the land on

which the road was located, and secondly, neither had any right to acquire more than an easement. *Venable v. Wabash R'y Co.*, 112 Mo. 103.

As to the toll houses and gates and personal property, the State makes no claim, and the title thereto is not involved in this proceeding.

This brings us to the rights of the defendant, The Hannibal & Ralls County Gravel Road Company, to demand from the public tolls for the use of this road. This company, on the fifth day of June, 1882, organized under the provisions of article 4, chapter 21, Revised Statutes 1879. It made no attempt to construct and maintain a road of its own, but took possession of the old Hannibal, Ralls County & Paris Plank Road and erected tollgates, and exacted toll for travel thereon.

Conceding without deciding that it had this right until the charter of the old company and its successor expired February 17, 1887, most clearly after that time it had no right to charge tolls upon this now disburdened public highway without the consent of the county court of Ralls county. R. S. 1879, sec. 855. This consent it never obtained, and the defendant in exacting tolls is maintaining a public nuisance, which can be abated at the instance of the State through her law officer, the prosecuting attorney of Ralls county.

The judgment of the circuit court granting the injunction is affirmed.

SHERWOOD and BURGESS, JJ., concur.