THE STATE ex rel. JUMP, Prosecuting Attorney, v.
LOUISIANA, BOWLING GREEN & ASHLEY
GRAVEL ROAD COMPANY et al., Appellants.

**Division One, March 15, 1905.**

1. **CORPORATION: Ouster: Remedy.** Quo warranto, and not in-
junction, is the proper legal proceeding to determine the right
of a·corporation to a franchise and to oust it therefrom.   An
injunction would merely restrain the defendant company from
doing a particular act, and would not determine its corporate
existence or declare a forfeiture of its corporate rights.   (Over-
ruling State ex rel. v. Hannibal & Ralls County Gravel Road
Co., 37 Mo. App. 496.)

2. ———: ———: ———: **Statutory and Common Law Quo War-
ranto.** The first issue tendered by the petition was that the
charter of the original company had expired, and the second
was that the company had failed for two months to keep in re-
pair the road on which the company had been given authority
to construct a macadam road and charge tolls, as it was by stat-
ute required to do, and therefore its charter was forfeitable.
*Held,* that a common law *quo warranto* was the proper remedy
to determine the first issue, and a statutory *quo warranto* the
proper remedy to determine the second issue.

3. **APPELLATE JURISDICTION: By Whom Raised.** The  ques-
tion of jurisdiction of a court over the subject-matter is always
present in every case, and may be raised by the parties for the
first time in the appellate court, or by the court of its own mo-
tion.

4. ———: **Title to Real Estate: Injunction: Trespass: Nuisance.**
Title to real estate cannot be directly adjudicated in an in-
junction suit and this is true whether the purpose of the suit
is to restrain a trespass on real estate or restrain the mainten-
ance of a nuisance thereon.   Hence, in such case, the appeal is
not to the Supreme Court on the ground that title to real estate
is involved.   No judgment that does not directly affect title
to real estate can involve title to real estate.

5. ———: ———: **Gravel Road Company:  Quo Warranto.  A**
gravel road company is of purely statutory origin, and under
·the statutes such a company had only the right, with the consent
of the county court, to construct a plank or gravel road and to
collect tolls from travelers thereon, and such a right is not an

interest in real estate, and hence an appeal from a judgment in an injunction suit to restrain such a company from collecting tolls, or in a *quo warranto* proceeding to oust it from its franchise either because of the expiration of its franchise or because such franchise has been unlawfully usurped, is not to the Supreme Court, for title to land is not involved in a determination of these issues, neither can the title to any real estate owned by the company be determined or involved in any such proceeding.

Appeal from Pike Circuit Court.—*Hon. D. H. Eby,* Judge.

TRANSFERRED TO ST. LOUIS COURT OF APPEALS.

*Wm. H. Biggs* for appellants.

*Dempsey & McGinnis* for respondent.

MARSHALL, J.—This is an injunction suit to enjoin the defendant company, and its officers and stockholders, who are also made parties defendant, from collecting tolls on the gravel road between Louisiana, through Bowling Green, to Ashley, in Pike county.

The circuit court granted a perpetual injunction, as prayed, and the defendants appealed.

The petition alleges that the defendant company is a corporation organized under the provisions of article four of chapter forty-two of the Revised Statutes of 1899. [This is evidently a typographical error for there is no article four of chapter forty-two of the Revised Statutes of 1899. That chapter relates to juries and not to corporations, and has only two articles. The Revised Statutes of 1889 was manifestly intended, for article four of chapter forty-two of the Revised Statues of 1889 (now article 5 of chapter 12, R. S. 1899) relates to macadamized, graded and plank road companies, and that is the character of the defendant company.]

The petition then charges that the defendants, Chas. S. Broadhead, Ollie C. Bryson and William C. Dougherty, are the directors of the company; that Broadhead is the president, and Bryson the secretary of the company; and that the office and place of business of the company is in Louisiana; that in 1852, pursuant to the act of February 27, 1851 (Laws 1851, p. 403), the Louisiana & Middletown Plank or Macadamized Road Company was organized, and that it built and constructed a plank road from Louisiana to Bowling Green, and later it covered the said road with macadam and gravel, and in 1868 it extended it from Bowling Green to Ashley; that said roads were built partly over lands of certain named individuals and partly on the roadbed of a public road; that the act of 1851 and the amendments thereto were amended and consolidated by the act of March 20, 1872, and the act of 1851 declared to be legal and valid, and the name of the company was changed to Louisiana & Middletown Gravel and Macadamized Road Company; and the company was authorized to use and appropriate the public highways free of charge, and said company did so; that the existence of the first-named company was limited to twenty years, and, therefore, terminated on February 27, 1871, or if revived by the act of 1872 and its life extended, it terminated on March 20, 1892, and at said time the charter rights of the company to the road reverted to and became vested in the public; and the public became entitled to use the same divested of tolls; that in 1893 the defendants took possession of said road and the toll houses, and have ever since demanded and collected tolls from persons passing over the road.

The petition then charges that the defendants have failed to keep up and maintain the road as required by law, but have permitted it become out of repair, and have not built bridges over five certain creeks and streams over which the road passes, and that much of the time the road is impassable for teams and vehicles;

that injunction is the only efficient remedy, and will avoid a multiplicity of suits. The prayer is for a perpetual injunction enjoining the defendants from collecting tolls or interfering with the road in any way, as a public highway.

The answer is a general denial, with a special plea that, on March 6, 1893, the county court entered an order granting a franchise to J. O. Broadhead et al., and to their associates, when organized as a corporation, to control, use and operate within the limits of the road, or as the same might thereafter be extended by the Louisiana & Middletown Gravel and Macadamized Road Company, a line of railway to be propelled by electricity, and that such railway should be used and operated and the work done in such a manner as to obstruct and interfere as little as possible with the use of said gravel road; and subject to all the rights and interests of the person or corporation, which at that time or thereafter might own and operate said gravel or macadamized road between Louisiana and Ashley; that in consequence thereof the county and the plaintiff are estopped to maintain this action; and further, that the defendant company and its predecessors, in good faith, spent large sums of money in repairing and keeping up the road, with the knowledge and acquiescence of the county court of Pike county and of the public generally, covering a period of many years, and, therefore, the plaintiff is estopped to maintain this action.

At the beginning of the trial the defendants objected to the introduction of any testimony, on the ground that the petition does not state facts sufficient to constitute a cause of action. The court overruled the objection and the defendants saved an exception.

The plaintiff then offered in evidence the acts of 1851 and 1872 aforesaid, and the act of March 12, 1859 (Laws 1858-9, p. 395), and proved that the rights of the original company were taken away from it by a judg-

ment of the circuit court under the act of 1859 and the road was sold by the county court to the Commercial Bank of Louisiana and John M. True; and also offered testimony tending to show that the road was in bad repair.

The defendants demurred to the evidence, the court overruled the demurrer, and the defendants saved an exception.

The defendants then introduced testimony tending to prove that since it took possession of the road, in 1893, it has put the same in good repair, built bridges, etc., and had collected tolls until a short time before this suit was brought, when it ceased to do so by consent of the parties hereto until the case should be determined. They further showed that on February 23, 1893, the Commercial Bank and John M. True, and the original company, sold and conveyed the road and all the franchises and rights they had thereto to James O. Broadhead, William J. Dougherty and O. C. Bryson for the sum of eight thousand dollars; that on March 6, 1893, the county court of Pike county granted to said Broadhead, Dougherty and Bryson a right to construct, use and operate an electric railroad upon the road, which should obstruct and interfere with the road as little as possible, and which should be subject to the rights and interests of the owners of the said road; that the defendant company had incorporated on April 21, 1893, and that it was organized to construct and operate a gravel road along the line of the old gravel road between Louisiana and Ashley, by way of Bowling Green; that the articles of association of said company recited that the organizers of the company had become the owners of a completed road, and of all the property and franchises vested in the said two companies, recited the act incorporating the same, and stated the purpose of the company to be "to own, maintain and operate the gravel road now completed and operated between the city of Louisiana and town of Ashley, distance of

eighteen miles," etc.; that upon objection of the plaintiff the court excluded said articles of association and the defendants saved an exception; that on the first day of June the said Broadhead et al. conveyed all the rights they had obtained as aforesaid to said road and franchises to the defendant company by a deed dated June 1, 1893. This was all the evidence adduced in the case, and thereupon the defendants demurred to the evidence, the court overruled the demurrer, and the defendants excepted.

The court made a finding of facts reciting the organization of the original company, the construction of the road, and the consolidated act of 1872, and then held that the charter granted to the original company and confirmed to the consolidated company by the act of 1872, expired on the 20th of March, 1892, and that the said road and all of the charter rights of the said company reverted to and became vested in the public, divested of tolls and all control and interference of said company; that after the expiration of said charter the defendants herein entered upon and took possession of said road and continued to collect and receive tolls from the public until August, 1902.

The court found the issue in reference to the keeping in repair of the said road in favor of the defendants, and also held that nothing contained in the judgment should be held to interfere with the rights of the defendant to construct, maintain and operate an electric road upon the gravel road under the order of the county court aforesaid. The judgment entered upon the finding was a perpetual injunction, enjoining the defendant from collecting tolls on the gravel road, and from interfering with the use of the road by the public, except as aforesaid.

I.

This action is evidently based upon the decision of this court in State ex rel. v. Hannibal & Ralls County

Gravel Road Company, 138 Mo. 332. In that case it appeared that the prosecuting attorney had previously instituted a proceeding by *quo warranto* against the defendant company to oust it of its franchise to collect tolls on the gravel road, on the ground that its charter had expired.

The circuit court held that injunction, and not *quo warranto,* was the proper remedy; the plaintiff appealed to the St. Louis Court of Appeals, and that court affirmed the judgment on the ground stated (37 Mo. App 505). Thereupon, in conformity to said ruling, the plaintiff instituted an injunction suit against the defendant company to enjoin it from collecting tolls and maintaining toll gates on the gravel road. The decree of the circuit court granted the injunction prayed. The defendant appealed to the St. Louis Court of Appeals and that court transferred the case to this court on the ground that the title of real estate was involved, and hence this court had appellate jurisdiction. This court entertained jurisdiction of the case and decided it upon its merits, and did not in any way discuss the question of the proper remedy or of the appellate jurisdiction of this court in such a case.

It thus appears that the plaintiff in this case had a direct precedent for this action. The question of the remedy in such cases and of the jurisdiction of the appellate courts necessarily presents itself for adjudication at the outset of this case. The circuit court and the St. Louis Court of Appeals were in error in the Ralls case in holding that injunction and not *quo warranto* was the proper remedy.

*Quo warranto* is the proper legal proceeding to determine the right to an office or franchise, or to oust the defendant therefrom if his title is found to be defective, or if his franchise has been forfeited or has expired. [23 Am. and Eng. Ency. of Law (2 Ed.), 596.]

"It is usually held that *quo warranto* proceedings to oust from a corporate franchise must be brought

against the individuals charged with the unlawful use of the franchise, instead of against the corporation, and it is said that the effect of bringing the proceedings against the corporation in its corporate name is to admit the corporate existence. This rule seems correct in principle where the exercise of corporate franchises is wholly unauthorized from the beginning. Where, however, there was originally a valid corporate organization, and it is sought to enforce a forfeiture, or where it is sought merely to oust a corporation from the exercise of particular franchises unlawfully assumed, the proceedings must be against the corporation, and not merely against its officers, agents or stockholders." [Idem, p. 623, and cas. cit.]

This is manifestly the correct rule, for injunction would merely restrain the defendant from doing a particular act, and would not determine the corporate existence or declare a forfeiture of the corporate rights. Such a question could only be determined in a direct proceeding by the State under a writ of *quo warranto*, where the charter and franchises of the company could be divested.

The issues tendered by the plaintiff in this case were, first, that the charter of the original company had expired; and, second, that the defendant company had failed to keep the road in repair. The first issue could only be determined in a *quo warranto* proceeding. The second issue was evidently based upon section 1236 of article 5, chapter 12, Revised Statutes 1899, which provides that if any gravel road company shall suffer the road to be out of repair so as to be impassable for the space of two months, such company owning such road shall be liable to forfeit its corporate powers or privileges, and such forfeiture may be enforced by information in the nature of *quo warranto* at the relation of any person desiring to prosecute the same. And if such company shall suffer the road to be out of repair to the injury, hindrance or delay of travellers for an

unreasonable time, they shall have no right to collect tolls thereon until the same is again repaired.

Thus, a common-law *quo warranto* is the proper remedy to determine the first issue, and a statutory *quo warranto* is the proper remedy to determine the second issue tendered by the petition in this case.

In the Ralls county case the St. Louis Court of Appeals transferred the case to this court on the ground that title to real estate was involved, and this court entertained jurisdiction, and passed over that question *sub silentio*.

The question of the jurisdiction of this court was not decided in that case, but the question of the jurisdiction of a court over the subject-matter is always present in every case, and may be raised by the parties for the first time in an appellate court, or by the court of its own motion, for no court ought to entertain jurisdiction where it has none.

It is obvious that title to real estate can not be directly adjudicated in an injunction suit, and this is true whether the purpose of the injunction is to restrain a trespass on real estate or the maintenance of a nuisance. No judgment that does not directly affect the title to real estate can involve the title to real estate. [State ex rel. v. Elliott, 180 Mo. 658.]

A gravel road company is of a purely statutory origin, and under article 5, chapter 12, Revised Statutes 1899 (being art. 4, chap. 42, R. S. 1889, and art. 4, chap. 21, R. S. 1879, and chap. 64, G. S. 1865), such companies have only the right, with the consent of the county court, to construct a plank road or gravel road and to collect toll from travellers thereon, and such a right is not an interest in real estate. The St. Louis Court of Appeals was, therefore, in error in saying in the Ralls county case that title to real estate was involved. Even in proceedings by *quo warranto* to oust a corporation from its franchise, either because of the expiration of its franchise or because such franchises have been un-

lawfully usurped, the title to real estate claimed or owned by the company can not be in anywise determined or involved. The Ralls county case and this case are similar; both being proceedings in equity for an injunction, and this court has no appellate jurisdiction in plain suits for injunction. In order to give this court jurisdiction in such cases there must be some other element involved which will bring the case within the provisions of section 12 of article 6 of the Constitution.

There are no such other elements in this case. The first issue tendered involved the question as to whether or not the charter granted by the act of 1851 to the Louisiana & Middletown Plank or Macadamized Road Company and the charter confirmed by the act of 1872 to the Louisiana & Middletown Gravel or Macadamized Road Company, had expired. No question was raised or could properly be claimed to exist, as to the charter of the defendant company, for that was granted on April 21, 1893, and had not expired in 1901 when this case was begun. The only question in this regard was whether or not the defendant company had acquired the franchises of the original company, and whether those franchises had expired by reason of the expiration of the period for which those companies were chartered.

The act of 1851 provided that the company "may have *continued succession.*" No period was limited in the act for the duration of the corporation, but section 1 of chapter 34, Revised Statutes 1845, which was in force when the act of 1851 became a law, provided that every corporation should have succession by its corporate name for the period limited in its charter, and when no period is limited, for twenty years. The act of 1872 contained a similar provision as to continued succession, but fixed no period for the duration of the corporate life; but chapter 62, General Statutes 1865,

limited the succession of a corporation to twenty years when no period was limited by the charter.

It is obvious from a reading of this statute, and from what was said by this court in State ex rel. v. Hannibal & Ralls County Gravel Road Company (138 Mo. l. c. 343), that said original companies construed the term "continued succession" in the act of 1851 and 1872 to give the companies a perpetual charter, and this construction finds support in the decision of this court in Fairchild v. Masonic Hall Association (71 Mo. 526), where it is held that a corporation invested by its charter with "perpetual succession," had a right to exist forever. And it is upon such construction alone that the act of Broadhead et al. in purchasing the rights of the original company from the Commercial Bank and J. M. True, who had become the purchasers thereof from Pike county, under the act of March 12, 1859 (Laws 1858-9, p. 395), can be explained; for without such construction it is evident that the said charters expired on March 20, 1892. Such construction can not now be placed upon those acts, for in State ex rel. v. Payne, 129 Mo. 468, this court thoroughly reviewed that question, and expressly disapproved the case of Fairchild v. Masonic Hall Association, supra, and held that the term "perpetual succession" or continued succession, meant only a capacity of succession for a period limited in the charter, or a period fixed by general statutes.

There is only one other conceivable view that Broadhead et al. could have taken in paying eight thousand dollars for the franchises of the original companies, and that is this: Under the act of March 12, 1859, the county court of Pike county had procured a judgment against the original company, forfeiting its right to the gravel road, and such act provided that in such a contingency the franchises should revert to the county and that the gravel road might be maintained

by the county and tolls collected thereon, but that the county court might sell the same to an individual. In case the county kept the road, no time was limited in the act for collecting tolls and the road might be perpetually a toll road. But section 12 of the act prescribed that if the road was sold to an individual by the county court, the individual should have the right to take, manage and control the road so purchased in accordance with the charter of the company and the laws of the State, ''and shall possess all the powers and privileges now possessed by the company having charge thereof.''

But Broadhead et al. acquired only the powers of the original company, which expired in 1892 at any rate. If Broadhead et al. had acquired the perpetual right of the county, instead of only the powers of the original company, their rights would not have expired at the date of the institution of this suit. Broadhead et al. were in error under either view of the case. When they purchased from the bank and True, in 1893, the franchises of the original company had expired. They, however, organized the defendant company, and the purposes of that company were to construct and control a gravel road along the line of the old gravel road between the city of Louisiana and Ashley by way of Bowling Green, and the defendant company afterwards obtained permission from the county of Pike to construct also an electric road over and upon the gravel road, but to interfere as little as possible with the gravel road. The defendants herein seem to claim that such permission to construct an electric road brought them within the provisions of section 2697, article 4, chapter 42, Revised Statutes 1889 (being sec. 1227, art. 5, chap. 12, R. S. 1899), which authorizes a macadamized, graded or plank road company to locate such a road over and upon any State or county road or highway, with the consent of the county court. It is obvious, however, that the consent of the county court

to construct an electric road on an existing gravel road or public road, is no such a consent as the statute contemplates that a macadamized road company shall obtain from the county court to locate its road upon an existing highway. If the defendant company had obtained, or may yet obtain, consent from the county court of Pike county to locate its macadamized or gravel road on an existing highway, the case would be altogether different from that presented by the case at bar.

In no view of the case, however, is the title to real estate involved in this action, nor has this court jurisdiction of this appeal upon any other ground.

The second issue tendered by the petition is that the defendant company failed to keep the road in repair. Section 1236, Revised Statutes 1899, provides that in such contingency the company may be proceeded against by an information in the nature of a *quo warranto*. The remedy provided is a statutory *quo warranto*, and, therefore, injunction will not lie. But aside from this, the trial court found this issue in favor of the defendants, and the plaintiff acquiesced in the judgment by not appealing therefrom, so that question is not involved in this appeal. The case falls within the appellate jurisdiction of the St. Louis Court of Appeals, and is, therefore, transferred to that court.

*Brace, C. J.,* concurs; *Valliant* and *Lamm, JJ.,* concur in the conclusion that the case is not within the jurisdiction of this court, but express no opinion otherwise on the points discussed.