STATE OF MISSOURI ex rel. JUMP, Respondent, v. THE LOUISIANA, BOWLING GREEN & ASHLEY GRAVEL ROAD COMPANY et al., Appellants.

St. Louis Court of Appeals, January 2, 1906.

1. **JURISDICTION: Court of Appeals Controlled by Ruling of Supreme Court: Constitution.** Where a cause is transferred by the Supreme Court to the Court of Appeals for want of jurisdiction in the Supreme Court, the expression of opinion by some of the judges of the Supreme Court in the cause not concurred in by a majority of the Court, is not "the last previous ruling of the Supreme Court" within the meaning of the sixth amendment of the Constitution adopted November, 1884, so as to re-

quire the Court of Appeals to follow such an opinion as against a previous decision of the Supreme Court (Case transferred from Supreme Court, reported in State ex rel. Jump v. Gravel Road Co., 187 Mo. 439).

2. QUO WARRANTO: Usurpation of Corporate Powers. Quo warranto is the proper proceeding to oust a corporation, whose existence is not brought into question, from exercising powers, liberties and franchises not warranted by its charter; and this applies to a proceeding to prevent a gravel road company from exercising a franchise and collecting tolls upon a road where no authority has been granted for that purpose.

3. ———: Injunction: Adequate Remedy at Law. Where a gravel road company took possession of a road formerly occupied by another gravel road company whose franchise had expired, and exacted tolls thereon, it was an unlawful obstruction of the highway and a public nuisance, and although quo warranto would lie to prevent such usurpation, the remedy being inadequate and incomplete, injunction was a proper remedy to prevent a continuance of the nuisance (State ex rel. v. Gravel Road Co., 138 Mo. 332).

4. PUBLIC NUISANCE: Unlawful Collection of Tolls: Public Highway. The unlawful obstruction of a public highway is a public nuisance and this applies to the unauthorized exaction of tolls by a company who has no franchise for that purpose.

5. ———: ———: Injunction. Injunction is the proper remedy to prevent a continuance of such nuisance, and it is proper for the prosecuting attorney of the county to institute the suit ex relatione.

6. CHARTER RIGHTS: Gravel Road Companies: Expiration of Franchise. Where an act of the Legislature granting a charter to a gravel road company provided that the company "may have continuous succession," while the general law in force at the time provided that every corporation should have succession by its corporate name for a period of twenty years, the corporate franchise expired in twenty years from the grant.

7. ———: ———: ———: Sale of Charter Rights. At the expiration of the franchise and charter rights of a gravel company, its roadbed and franchises vested in the public, a levy and sale of them under a judgment against the company passed no title and the purchaser could not maintain gates and collect tolls on the road purchased without the consent of the court of the county obtained under the provisions of section 1227, R. S. 1899.

8. ———: ———: Consent of County Court: Strict Construction. A public grant should be construed strictly and nothing passes

by implication except that which is necessary to the enjoyment of the rights granted. A grant by the county court to a gravel road company to construct a gravel road, with a proviso that it should in all respects be constructed and operated so as to "interfere as little as possible with the use of the present road as now constructed, subject to the rights of the corporation who now or hereafter may operate said gravel road" did not by implication give such company the right to maintain toll gates and collect tolls.

9. **PUBLIC NUISANCE: Obstructing Highway: Injunction: Pleading.** In a proceeding to enjoin a gravel road company from maintaining toll gates and collecting tolls upon a public highway, where the petition alleges the existence of the highway, the right of free use by the public of the same, unincumbered by tolls, and the unlawful collection of the same, it sufficiently states a cause of action.

Appeal from Pike Circuit Court.—*Hon. David H. Eby,* Judge.

AFFIRMED.

*Wm. H. Biggs* for appellants.

The action was brought and sustained under the authority of the decision of this court in the case of State ex rel. v. Gravel Road Company, 138 Mo. 332. Under the decision of the Supreme Court, supra, it was incumbent on the plaintiff to aver and affirmatively prove that the defendant company was in possession of a public road in the county, and that it had unlawfully erected toll gates thereon and was collecting tolls from persons traveling over the same; that is, that these things had been done "without the consent of the County Court." R. S. 1889, sec. 2697; R. S. 1899, sec. 1227.

*Ball & Sparrow, Tapley & Fitzgerrell, Dempsey & McGinnis* for respondent.

Appellants concede that under the rule announced in State ex rel. v. Payne, 129 Mo. 473, and State ex rel.

116 App—12

v. Gravel Road Company, 138 Mo. 332, the charter life of the Louisiana and Middletown Gravel or Macadamized Road Company expired on the 20th day of March, A. D. 1892. Appellants seem to rely upon an alleged order of the county court made on the 6th day of March, 1893, set out on page eleven of their abstract whereby said court undertakes to authorize James O. Broadhead, William Dougherty and O. C. Bryson when organized as a corporation to construct and operate an electric railroad on the right of way of what is there called the Louisiana and Middletown Gravel or Macadamized road. Such order could not have been made under section 1227, R. S. 1899, and it seems that there was no law authorizing it at the time. Appellants misconceive the issues tried and determined in State ex rel. v. Gravel Road Company, 138 Mo. 332. In that case as in this a corporation was collecting tolls on a road built by another corporation whose charter life had expired and the live corporation as in this case had failed to get leave of the county court, if such leave could have been granted at all. For it may be questioned whether such leave would be given where gravel or macadamized roads are already constructed. But in the case last mentioned the court announced no such rule of pleading as appellants assert. Moreover appellants alleged and sought but failed to prove that the county court did authorize them to take possession of the road and collect tolls thereon. This brings them within the rule of "express aider" and cures all alleged defects. Price v. Protection Co. 77 Mo. App. 241, and cases cited.

STATEMENT.—This case was certified to this court by the Supreme Court. It is an injunction proceeding instituted by the prosecuting attorney of Pike county and the State ex rel. to restrain the defendants from maintaining a public nuisance, i. e., collecting tolls on a certain public road in said county. The petition is as follows:

"Plaintiff respectfully states to the court that the relator herein, John W. Jump, is prosecuting attorney within and for the county of Pike, in the State of Missouri; that the Louisiana, Bowling Green & Ashley Gravel Road Company is a corporation organized under the provisions of article four (4) of chapter forty-two (42) of the Revised Statutes of Missouri of 1899 (manifestly R. S. 1889). That said corporation is located and has its office and place of business at the city of Louisiana in said county.

"That the said Charles S. Broadhead, Ollie C. Bryson, William J. Dougherty are directors of said corporation and the said Charles S. Broadhead is the president and chief executive officer thereof and the said Ollie C. Bryson is the secretary of the board of directors of said company. That said Charles S. Broadhead resides in the city of St. Louis in said State, and the said Ollie C. Bryson resides in and keeps his office as such secretary in said city of Louisiana, county of Pike aforesaid.

"That on or about the —— day of —————, A. D. 1852, there was organized under the provisions of an Act of the General Assembly of the State of Missouri, entitled an act to incorporate the Louisiana and Middletown Plank or Macadamized Road Company, approved February 27, A. D. 1851, a corporation by the name and style of the 'Louisiana and Middletown Plank or Macadamized Road Company.' That said last named corporation built and constructed a plank road from the then town, now city of Louisiana to the then town, now city of Bowling Green and subsequently during the year —————, caused said road to be macadamized and covered with gravel, and thereafter, during the year 1868, said last-named corporation built and constructed a macadamized road from said town of Bowling Green to the town of Ashley in said county, the same being an extension and part of the said road so constructed from Louisiana to Bowling Green. That said roads were

built and constructed over lands of Mary M. McElwee, . . . and others.

(Here the location of the said road from Louisiana to Ashley is particularly described.)

"That said road was constructed in part on the roadbed of a public road leading from said town of Louisiana to Bowling Green and from the latter named place to the town of Ashley. That said corporation as required by the said act caused a survey of its route as above set forth to be made and the same was duly filed and recorded in the office of the recorder of deeds of said county of Pike on the 17th day of August, A. D. 1852.

"That under the provisions of an Act of the General Assembly of the State of Missouri, entitled an Act to amend an act entitled 'An Act to Incorporate the Louisiana and Middletown Plank or Macadamized Road Company' approved February 27th, 1851, and to reduce into one the several acts amendatory thereof, approved the 20th day of March, A. D. 1872, the organization of said company as theretofore made under the superintendence of the persons named in said act so approved on the 27th day of February, A. D. 1851, is declared to be legal and valid, but the name of said corporation is and by said act is changed to that of the Louisiana and Middletown Gravel or Macadamized Road Company.

"That under the provisions of the said acts of said General Assembly the said corporation and company was authorized to use and appropriate the public highways free of charge and said company did so use such roads.

"That the existence of said Louisiana and Middletown Plank or Macadamized Road Company was limited to the period of twenty years, and therefore, terminated on the 27th day of February, A. D. 1871, and if revived by the said act so approved on the 20th day of March, A. D. 1872, its life and existence was extended and continued for a period of twenty years thereafter,

and therefore, terminated on the 20th day of March, 1892. That upon the expiration of the charter rights of said company the said road bed so laid out and constructed reverted to and became vested in the public as an easement, and thereupon the public became entitled to use the same divested of tolls and to travel over the same without hinderance or molestation. That thereafter, to-wit, on or about the —— day of ————, A. D. 1893, the said defendants took possession of the said road bed and the toll houses which had been erected along said road and unlawfully demanded and collected tolls from persons passing over said road and ever since so taking possession of said road up to the present time have demanded and collected and are still demanding and collecting tolls of persons passing over said road.

"That the defendants have failed to construct, keep up and maintain said road as required by law in this: that that part of the road which lies between the towns of Louisiana and Bowling Green passes over and through certain large streams of water, among them a certain creek called Noix creek and four other streams tributory thereto through which streams large bodies of water constantly flow, and that often the waters thereof are so deep and flow so rapidly as that the said streams are non-fordable and cannot be crossed by persons traveling on said road with the ordinary teams and in vehicles used by the traveling public and by persons residing in localities contiguous to said road and who are compelled almost daily to drive over the same and that the defendants have hitherto failed and neglected to erect, construct and maintain bridges over and across said streams at the several places where said road crosses the same. That much of the time during the winter and spring of each and every year said road becomes impassable for such teams and vehicles as are used on the same as aforesaid by reason of the failure of the defendants to keep a sufficient quantity of gravel stone or other like substance thereon so as to form a

hard solid bed and that said road is even worse for travel than an ordinary country road commonly called a dirt road.

"Plaintiff further states that by the aforesaid unlawful acts on the part of said defendants in so demanding and collecting said tolls and the other matters and things herein complained of, large numbers of the citizens of the State of Missouri and especially of said county of Pike sustain great damage for which they can not be compensated in or by action for damages and if any such remedy exist it would require a multiciplicity of suits to protect and enforce the rights of said citizens; and that said citizens have for the injury and loss thus sustained no adequate remedy except by injunction prosecution in the name of the State as hereinbefore set forth.

"Plaintiff therefore prays the court to enjoin and restrain the said defendants from collecting tolls on said road and from in any way interfering with the use of said road by the public and for such other and further orders as to the court may seem just and proper."

The answer contained a general denial and affirmatively alleged that after the expiration of the charter of the old gravel road companies, the county court of Pike county, by order of record, granted a franchise to the defendants, J. O. Broadhead, and his associates, when organized as a corporation, to build, maintain and operate an electric railroad on the right of way of said Louisiana and Middletown Gravel or Macadamized Road Company and that it was provided by said order of the county court that the rights and privileges conferred therein should in all respects be used and operated in such a manner as to obstruct or interfere as little as possible with the use of said gravel road mentioned in plaintiff's petition and subject to all the rights and interests of the persons or corporation which at that time or thereafter might own and operate said gravel or macadamized road; that such order of the county court created an es-

toppel as against the county and against the plaintiff in the present suit and that therefore the plaintiff ought not to be permitted to maintain this action.  And further, that the defendants have expended large sums of money in good faith in repairing and keeping up said road with the knowledge and acquiescence of said court and the public in general and that therefore an estoppel arises against the plaintiff in this proceeding which should preclude their recovery.

To sustain the issues on the part of the plaintiff, there was read in evidence, first, an act of the Legislature incorporating the Louisiana and Middletown Plank and Macadamized Road Company, approved February 27, 1851, (Laws of Mo. 1851, p. 403), and second, an act of the Legislature reincorporating the above-named company and entitled "An Act to amend an Act entitled 'An act to incorporate the Louisiana and Middletown Plank and Macadamized Road Company;'" approved February 27, 1851, and to reduce into one the several Acts amendatory thereof, approved March 20, 1872. (Laws of Mo. 1871-1872, p. 227.)  By the last-named act the organization of such company as theretofore had under the original act, is declared to be legal and valid and the name of said company is changed to that of the Louisiana and Middletown Gravel or Macadamized Road Company.

Judge Thomas J. C. Fagg testified that he had lived in Pike County, Missouri, for over sixty years; that the gravel or macadamized road from the town of Louisiana through Bowling Green to Ashley in Pike county was built by the Louisiana and Middletown Plank or Macadamized Road Company between the years 1852 and 1860, i. e., that portion of the road from Louisiana to Bowling Green was then built, and later, the portion of said road from Bowling Green to Ashley was constructed between the years 1860 and 1870.  It was at first a plank road, afterwards stone and gravel, and this is the only plank or gravel or stone road built

from Louisiana to Bowling Green and Ashley in said County.

Gov. Robert A. Campbell testified that he was familiar with the affairs of Pike county from 1851 up to the present time and that the plank road from Louisiana to Bowling Green was constructed by said original company in 1852 or 1853. It was at first a plank road to the foot of the hill about one mile from Bowling Green, the remainder being stone and gravel. This plank and stone and gravel road occupied the old dirt road between Louisiana and Bowling Green. The road was extended to Ashley about 1870 and was constructed of stone and gravel. After a few years, stone and gravel were substituted for the plank on the original road. The portion between Bowling Green and Ashley passed over and was located in part on the prior public road. The road is the same that was built and operated by the old company and tolls were collected on the old road.

The records, profiles and maps in the office of the recorder of deeds of Pike county showing the location and distances, etc., pertaining to the road were introduced; also the records and proceedings of said county court showing the condemnation of lands for the right of way for said road. It was shown that toll gates and toll houses were erected on said road and that tolls were collected therefrom by both of said companies. There was also read in evidence on the part of plaintiff, an act of the Legislature, approved March 12, 1859, entitled "An Act in regard to Road Companies in the County of Pike," (Laws of Missouri, 1858-1859, p. 395), which said act of the Legislature authorized a proceeding against such companies for certain delinquencies therein mentioned. It was shown that by virtue thereof, the rights, franchises and property of the then existing company were sold under a judgment of the circuit court authorized by such act of 1859, and by competent mesne conveyance, all of its rights, property and franchises passed to the Commercial Bank of Louisiana and John

M. True, and that such bank and True entered into possession of and controlled said road and collected tolls thereon for several years thereafter. It was shown that the present defendants took possession of said road about the year 1893 and continued to collect tolls thereon up to the time of the institution of this proceeding. Senator David A. Ball gave testimony to the effect that the road over which the defendants were collecting such toll is the same and identical road as that maintained by the prior companies under their charter. There was also some evidence introduced on the part of plaintiff tending to show that the road had been permitted to continue in bad repair under the present management.

At the conclusion of the testimony on behalf of the plaintiff, defendant requested the court to instruct that under the law and the evidence, the finding should be for the defendants. This the court declined to do.

At the inception of the trial, defendant also entered a general objection to the introduction of any evidence under the petition on the ground that the petition failed to state facts sufficient to constitute a cause of action. On the part of defendants it was shown that on February 21, 1893, the Commercial Bank and John M. True conveyed, by competent deed, to James O. Broadhead, Wm. J. Dougherty and O. C. Bryson, in consideration of $8,000, the "roadbed right of way, toll houses and toll gates owned and possessed by the said parties of the first part, and used by them in connection with the occupation and use of said road as the same is now constructed and operated from the city of Louisiana to the town of Ashley through the town of Bowling Green in the county of Pike, together with all franchises, rights and privileges belonging in any wise and appertaining to said road;" that on March 6, 1893, the county court of Pike county, by order of record, granted to said Broadhead, Dougherty and Bryson, as follows: "It is hereby ordered and adjudged that the following rights, and privileges and franchises be and the same are hereby

granted to them and to their associates when organized as a corporation to construct, use and operate within the limits of the right of way as now owned or as the same at any time hereafter be extended by the Louisiana & Middletown Gravel or Macadamized Road Company, a line of railway upon which cars may be run and propelled by electricity or other motive power as they may select, provided that the same shall be in all respects so constructed and operated as to obstruct and interfere as little as possible with the use of the present road as now constructed and subject to the rights and interests of the persons or corporation who now or hereafter may own and operate said gravel or macadamized road." It was then shown that the present defendant, the Louisiana, Bowling Green and Ashley Gravel Road Company was incorporated April 21, 1893, for the purpose of constructing and operating a gravel road along the line of the old gravel road between the city of Louisiana and Ashley by way of Bowling Green in Pike county. The incorporators and stockholders of the last named company are as follows: James O. Broadhead, sixty-nine shares; O. C. Bryson, four shares; Wm. J. Dougherty, four shares; Charles S. Broadhead, one share; David A. Ball, one share and Thomas J. C. Fagg, one share. And it was further shown that James O. Broadhead, Wm. J. Dougherty and O. C. Bryson, on June 1, 1893, conveyed the road in question to this new corporation, the Louisiana, Bowling Green and Ashley Gravel Road Company, one of the defendants herein; that since said defendants have taken charge of said road, they have expended some means thereon and placed the same in good repair, constructed bridges, etc., and collected tolls until a short time prior to the trial of this cause, when they ceased so to do, by consent of parties, until the present proceeding should be determined.

The circuit court found the issues arising by virtue of the alleged failure of the defendant company to keep the road in repair, in favor of defendants and also ad-

judged that nothing contained in the judgment should be construed to interfere with the rights of the defendants to maintain, construct and operate the electric or other railroad as mentioned in the order of the county court in evidence upon the gravel road. On the other matters, the finding was for the plaintiff. The judgment recited the organization of the original company, the location and construction of the road and the consolidated act of 1872, holding that the charter granted to the original company and confirmed to the company by the consolidating act of 1872, expired on March 20, 1892, and that upon its said expiration, the said road and all of the charter rights and franchises of the said company reverted to and became vested in the public, divested of the burden of tolls and all control and interference of said company; that after the expiration of said charter, and after said road and rights and franchises herein became vested in the public, the defendants herein entered upon and took possession of the same and continued to receive and collect tolls until August, 1902, and therefore adjudged the said collection of tolls by the defendant on the road so disburthen therefrom, was wrongful and perpetually enjoined the defendants from further collection thereof.

Defendant perfected its appeal from said judgment to the Supreme Court. That court held that it had no jurisdiction of the cause and therefore certified the same to this court for final determination.

Section 1234, art. 5, chap. 12, R. S. 1899, dealing with such road companies, provides that "It shall be the duty . . . . at all times to maintain a smooth and permanent road, so as to form a hard and even surface, and maintain and keep in good repair all necessary bridges, culverts, ditches and dykes, and upon failure to do so, neither they nor their agents shall charge or exact any toll from any person or persons traveling over or on such road." It seems that the allegations pertaining to the defendant's failure to maintain the road were pre-

dicated upon this section of the statute. This appears from the derelictions in this behalf therein complained of as they are failure and "neglect to erect, construct and maintain bridges over and across said streams at the several places where said road crosses the same," also "failure of the defendants to keep a sufficient quantity of gravel, stone or other like substance thereon so as to form a hard, solid, roadbed."

It does not sufficiently appear from the allegation that the pleader intended to bring the case within the first clause of section 1236 of the same article, which authorizes a quo warranto proceeding to forfeit the corporate powers and priviliges of the company when the road is "suffered to be out of repair so as to be impassable for the space of two months," for the reason that no allegation is contained therein that the road has been suffered to be out of repair so as to be impassable for the space of two months, nor does it sufficiently appear from the allegation that the pleader intended to predicate the allegation on the second and last clause of that section, which provides that, "if such company shall suffer the road to be out of repair for an unreasonable time," they shall have no right to collect tolls, etc., for the reason that no allegation is found therein to the effect that the road was suffered to be out of repair to the injury, hindrance or delay of travellers for an unreasonable time, nor is the allegation equivalent thereto. In other words, none of the earmarks of this section are found in the pleading, whereas the pleading does predicate upon the failure to "maintain bridges" and "hard, solid bed," which are especially mentioned in section 1234 supra as obligations resting upon the company, for default of which the right to collect tolls is forfeited. Be this as it may, however, the circuit court found the issue on this branch of the case for the defendants and it does not appear here for review as plaintiff acquiesced in such finding by failing to appeal therefrom. Inasmuch as this proceeding is by injunction, however, the

question is noticed here solely in order to determine for
ourselves whether or not that portion of the pleadings
predicated the cause upon section 1236 supra which
authorizes a quo warranto to invoke its provisions and
thus possibly throw some ray of light upon the proper
form of precedure pretaining to the whole case. In view
of this finding by the trial court, there remains for our
consideration, only so much of the case as exists without
this feature. The views of the court on the principles of
law applicable to the facts stated will be expressed in the
opinion.

NORTONI, J. (after stating the facts.) —1. As
said before, this case was appealed from the circuit to
the Supreme Court. That court, upon an examination
of the record, found itself to be without jurisdiction to
proceed, and therefore certified the same to this court
for determination. In doing so, one of the learned jud-
ges of that court expressed certain views on the case in
the form of a written opinion, which was concurred in
by one of his learned associates, the remaining two
members of the division, however, declining to concur
in the views therein expressed, and concurred only inso-
far as it was necessary to hold that the court had no jur-
isdiction of the cause and to make an order transferring
the same to this court. That opinion, as reported, is to
be found State ex rel. John W. Jump, etc., v. The
Louisiana, Bowling Green and Ashley Gravel Road
Company, 187 Mo. 439, 86 S. W. 170, and therein the
learned judge advanced the views that the issues ten-
dered by the plaintiff in this case were: "First, that the
charter of the original company had expired; and, sec-
·ond, that the defendant company had failed to keep the
road in repair. The first issue could only be determined
in a quo warranto proceeding. The second issue was evi-
dently based upon section 1236 of art. 5, chap. 12 R.
S. 1899, which provides that if any gravel road company
shall suffer the road to be out of repair, so as to be im-

passable, for the space of two months, such company owning such road shall be liable to forfeit its corporate powers or privileges, and such forfeiture may be enforced by information in the nature of quo warranto at the relation of any person desiring to prosecute the same; and if said company shall suffer said road to be out of repair, to the injury, hindrance or delay of travellers, for an unreasonable time, they shall have no right to collect tolls thereon until the same is again repaired. Thus a common law quo warranto is the proper remedy to determine the first issue, and a statutory quo warranto is the proper remedy to determine the second issue tendered by the petition in this case."

It is a cause of much regret among the members of this court that we are unable to accept those views and so hold, inasmuch as the very great respect we entertain for the learned judge was so held, renders it not only a painful, but a difficult task as well to announce views not wholly concurrent therewith.   In the proper and conscientious exercise of the constitutional office of the court, it is incumbent and imperative on us, however, to adjudicate such matters as are submitted for investigation, ascertainment and decision and to which the jurisdiction of the court attaches, in accordance with the law on the subject as it reveals itself to our senses on careful, candid and conscientious research and reflection, restrained only by the constitutional mandate to be found in section six of the amendment to the Constitution of Missouri, adopted November, 1884, which provides that "the last previous rulings of the Supreme Court on any question of law or equity shall in all cases be controlling authority in such courts of appeals."   Under this constitutional provision, had the views expressed in the opinion referred to, been concurred in by a majority of the members of that court in a case properly within its jurisdiction, or rather, in a case in which the court assumed to proceed as having jurisdiction, then its binding force and effect should not and would

State ex rel. v. Gravel Road Co.

not be questioned here, as we would be precluded thereby from adjudicating contrary thereto. But as the case now stands, we are confronted with those views not having the force and effect of a decision of that court. The jurisdiction of that court attaches insofar only as it was necessary to make an order transferring the case to this court and no further. [Sec. 1657, R. S. 1899.]

The legal phase of the situation presents no difficulty. It is obvious that it is the duty of this court to determine the case at bar on the principles of law as in due diligence and good conscience we ascertain them to be, and when those principles or any phases of them are adjudicated by the constitutional Supreme Court of Missouri, i. e., concurred in by a majority of the judges, to obediently follow the last previous ruling of such court. But the situation is not free from embarrassment. We here, earnestly endeavoring to discharge the constitutional functions of the court and summoning our best efforts and conscience to a faithful discharge of that duty, are called upon now to either follow this extra-judicial utterance of two of the learned judges of the superior court of the State or disagree therewith and decline so to do. To follow it might be opposed to our conscientious convictions on the subject and, if not having authority under the constitution of a decision of the Supreme Court, our duty would point clearly the way to decide the questions involved upon our understanding of the law. On the other hand, to disagree with those views expressed and decline to follow them, might be interpreted as a lack of proper respect on our part as well as a departure from what may seem proper decorum or judicial propriety. This, however, we desire here and now to disaffirm and to say that with entire respect for the great learning and ability of the learned judge who expressed the views mentioned, as well as his learned associate who concurred therein, and with the very fullest measure of esteem for our judicial superiors, we are unable to accept the views *in toto* as ad-

vanced, and shall proceed to dispose of the case under consideration in accordance with our conception of judicial duty.

2.   The case of State ex rel. v. Hannibal & Ralls Gravel Road Company, 138 Mo. 332, is the last previous expression of our Supreme Court on the question here involved. That case was practically on all fours with this. In many respects it was identical. The history of the controversy was that the proceeding was first instituted by quo warranto in the name of the State ex rel., Prosecuting Attorney of Ralls county to forfeit the charter of said defendant and especially oust it of the franchise of collecting tolls on the old road. That case was tried in the circuit court, which held that the defendant had no right to collect tolls on said old road but that injunction and not quo warranto was the proper remedy. The plaintiff in that case appealed to this court, which affirmed the judgment of the lower court. [37 Mo. App. 505.]   Thereupon an injunction suit, such as the present, was instituted, praying that the defendant be restrained from collecting tolls on the old roadbed. The finding and decree were in favor of the plaintiff and the defendant was enjoined as prayed. The case reached the Supreme Court, where it was determined by the court on the merits.   The very able opinion of the court was prepared by Judge GANTT. It is true the question as to whether injunction or quo warranto was the proper remedy was not discussed in the Supreme Court, as appears from the briefs and opinion. It appears, however, from the fact that the court entertained jurisdiction and proceeded to administer the relief prayed for, that the court treated the matter as having been presented in the proper form.   It seems, therefore, that the question of form of procedure is settled.   The force and effect of such action by that court in entertaining jurisdiction and administering relief sought in a cause was considered by the court in banc, and it was adjudged that: "This entertainment of such

cause for such a prescribed purpose was nothing less than a tacit avowal of the right and propriety of doing so, since otherwise the writ would indubitably have been quashed." [State ex rel. v. Fleming, 147 Mo. 12.] We must therefore hold that the case of State ex rel. v. Gravel Road Company, supra, is an authoritative adjudication on the question involved; that the case is a precedent in point, and that it is a duty imposed upon this court by the Constitution of the State to be governed and controlled thereby in administering the principles of law applicable to the case at bar.

But it is said that both the Supreme Court in State ex rel. v. Gravel Road Company, supra, and this court, in the same case, 37 Mo. App. 505, were in error; the Supreme Court in entertaining the injunction proceeding, and this court in denying the writ of quo warranto, and that in this case, the common law quo warranto and not injunction is the proper proceeding on the first issue asserted to have been tendered by the petition. It is true, as said by Judge MARSHALL, that quo warranto is the proper legal proceeding to determine the rights to an office or franchises or to oust defendant therefrom if his title is found to be defective. [23 Amer. & Eng. Ency. Law (2 Ed.), 596.] And it is the law that a corporation may be ousted by quo warranto from the enjoyment and exercise of powers not conferred by law, but unlawfully assumed by it and this may be done without affecting the corporation in regard to its proper franchises. But where the unlawful acts are grounds for forfeiture, it is proper to oust the corporation of all of its franchises by quo warranto. [23 Amer. & Eng. Ency. Law (2 Ed.), 640; State ex inf. v. Equitable Loan, etc., Co., 142 Mo. 341.] It is likewise true and under the adjudications in this State as well as generally, the rule is well settled to the effect that if quo warranto be prayed to oust a corporation on the grounds that it is not a corporation or has no legal existence as such, it

must be prayed against those persons who are assuming to act as such corporation and not against the corporation itself, for the very good reason that if the proceeding be against the corporation, as such, then the act of proceeding against it as a corporate entity is an act of affirmance on the part of the relator, that it is a corporation in fact, when by the pleadings, he asserts and alleges that it is not such. The two positions are thus seen to be inconsistent, therefore the rule that when the proceeding is to dissolve an institution, operating as a corporation, for the reason it is not such, the parties themselves who thus usurp the powers are to be made defendants, for by making the particular persons defendants, it is an act in disaffirmance of the corporation. But this rule does not obtain in a case where the corporation, as such, has a legitimate existence and the quo warranto is not to divest it of its charter on the grounds that it is not a corporation, but seeks a judgment on the grounds that it is exercising powers and liberties which are not included in its charter; or in other words, when it is not affirmed to be a usurper of corporate powers in the first instance, but it has such corporate existence and had usurped powers and liberties which it has not, by virtue of its otherwise legitimate existence, and operation. In such case, the complaint is against a live and going entity on the grounds of assumption of powers and liberties not warranted by its charter, and the writ should be directed, not against the persons, but should go against the entity itself in order to reach the root of the evil, for it is the corporation and not the individuals that is complained against. [State ex rel. v. Fleming, 147 Mo. 9; State ex rel. v. Gravel Road Co., 37 Mo. App. 505; People v. City of Spring Valley, 129 Ill. 169, 21 N. E. 843; People v. Rensselaer, etc., Ry. Co., 15 Wend. 113; State v. McReynolds, 61 Mo. 202; 2 Spelling Extra. Relief, secs. 1811-12-43-44-52; 23 Amer. & Eng. Ency. Law (2 Ed.), 623.]

It seems, therefore, that if the respondent had de-

sired merely to oust the existing corporation from exercising the particular franchises of the old corporation, which were being unlawfully assumed by the new company in collecting tolls upon the road, that quo warranto would lie for that purpose. Authorities, supra. The right to erect gates and collect tolls upon roads, bridges, canals, channels and other highways, is a franchise, triable by quo warranto, well recognized by the authorities. [23 Amer. & Eng. Ency. Law (2 Ed.), 643, and numerous cases cited therein.] Inasmuch, however, as this proceeding, when directed against a corporation, can only operate upon corporate franchises quo warranto will not lie in the absence of a statute merely to test the legality of the acts of the corporation, not amounting to the usurpation of franchises, such as the legality of its title to or possession of property. [23 Amer. & Eng. Ency. Law (2 Ed.), 641; State ex rel. v. Railroad, 50 Ohio St. 239; State ex rel. v. Hannibal, etc., Road Co., 37 Mo. App. 504.] And it seems that it was upon this theory the opinion in the case supra, State ex rel. v. Hannibal, etc., Road Co., 37 Mo. App. 504, is based. The court held that inasmuch as the record disclosed that the defendant therein was shown to be a duly organized and existing corporation, with the power to own or construct a gravel road along a designated line, to erect toll gates thereon, and demand and exact a reasonable toll from the persons travelling over such road, and that it was further shown to be in actual possession of such a road along such designated line, that this was the end of the inquiry in quo warranto, emphasizing the doctrine that in such proceeding, the nature and character of the defendant's title to the road could not be inquired into and its charter forfeited because it had acquired no title to the road, which evidently was viewed by the court as the real question sought to be presented for decision, and as such question called for an adjudication as to whether or not the road and franchises in question passed to the defendant by

a certain conveyance, the court answered: "Property
rights cannot be interfered with or determined in such
proceeding," citing Morawetz Corp., sec. 1033; Boone,
Corp. sec. 167; State ex rel. v. Hannibal, etc., Road Co.,
37 Mo. App. 504. The proposition of law there assert-
ed, is correct, beyond question, as evidence by the au-
thorities supra. It is evident from the decision in that
case, however, that the court overlooked the fact, that
even though the new company, incorporated after the
old company had passed out of existence, by virtue of
its charter expiration, was chartered under the general
law to construct and own a gravel road along the desig-
nated road which was that of the old road, then vested
in the public because of the demise of the old company
by limitation of its charter, and even though such new
company was authorized by its charter to exact tolls for
the use of the road, that this charter could not and did
not confer upon it the franchise to occupy said old road
and exact tolls thereon until it had taken one additional
step and that is, procured the consent of the county
court to such occupancy under the statute—then section
855, R. S. 1879; and sec. 2697, R. S. 1889, now sec. 1227,
R. S. 1899, and until it had procured this consent it was
usurping and wrongfully exercising a franchise in occu-
pying the old road and collecting the tolls, for its
charter conferred no right upon it to do so until it had
first obtained the consent of the county court, State ex
rel. v. Gravel Road Co., 138 Mo. 346, and the right to
exercise such franchise could certainly have been tried
and determined without trying the title to the road. It
is to be noted that in that case, Judge THOMPSON dis-
sented and Judge ROMBAUER concurred reluctantly,
expressing doubt as to its soundness, and commenting,
"The trial court, whose judgment is presumptively cor-
rect, is in such case entitled to the benefit of the doubt."
We are frank to say, however, that inasmuch as the
right to collect tolls is a franchise triable upon quo war-
ranto and that the defendant in that case was clearly

exercising privileges which it had not acquired, even though chartered for that purpose, having failed to perform on its part the necessary precedent conditions to obtain the right to collect tolls. It seems that quo warranto against the company, even though it affirmed and admitted a legitimate and corporate existence, was the proper remedy to oust it from the exercise of the franchise, and to this extent we agree with the opinion of the learned judge of the Supreme Court hereinabove referred to.

3. Assuming, then, that quo warranto may have been a proper remedy in this case, the question then suggests itself, is quo warranto to oust the present defendant corporation from exercising the franchise of collecting tolls in the highway an adequate remedy at law in the sense that a court of equity would thereby be precluded from interposing by process of injunction, so that, therefore, this proceeding for the extraordinary relief sought, ought not to be maintained? In this behalf, it might be said and so eminent authority as Mr. Spelling could be cited, where, in treating of the subject that equity will not interfere when there is an adequate remedy at law, it is said: "The rule extends to cases in which a remedy has been provided in the form of information by quo warranto, the latter remedy being *pro forma* criminal." [1 Spelling, Inj. & Extra. Relief (2 Ed.), sec. 24.] And supported, too, by Chancellor Kent in Attorney-General v. Utica Ins. Co., 2 Johns. Ch. 371. The answer is, that the competent legislative authority of this State has so modified the rule above stated that it is applicable only where there is an adequate remedy for the invasion of a right which may be compensated in damages. The Supreme Court of Pennsylvania has said: "The remedy at law referred to is not one which would accomplish the same result as a mandatory injunction, such as the right of quo warranto, or indictment for maintaining a nuisance. It means merely an action at law to recover damages for

any injury sustained." [Commonwealth ex rel. v. Bala, etc., Co., 153 Pa. 47; 16 Amer. & Eng. Ency. Law (2 Ed.), 353-354.]

Our statutory provision is to be found in section 3649, Revised Statutes 1899, as follows: "The remedy by writ of injunction or prohibition, shall exist in all cases . . . to prevent the doing of any legal wrong whatever, whenever, in the opinion of the court, an adequate remedy cannot be afforded by an action for damages."

It is unnecessary to comment that damages could not be awarded in quo warranto. This statute may be considered as more particularly applicable in a case where an individual or private parties are seeking relief for some private injury as it contemplates the right of recovery in damages being a necessary element of the remedy at law which would preclude injunction, and such proceeding is out of the ordinary when the State is complaining. Be that as it may, however, it evidences the policy of the jurisprudence of this jurisdiction on the question as manifested by legislative enactment, and seems to be in accord with the announcement of the doctrine of the Supreme Court of Pennsylvania above quoted. Turner v. Stewart, 78 Mo. 480, a case wherein the owners of a steamboat were in the constant habit of discharging freight at a private wharf against the protest of the owners of the wharf, thereby seriously interfering with his business of sawing, receiving and delivering ties, and they threatened to continue this practice, the court said that the wharf owner might maintain injunction. This was clearly a case in trespass where damages might have been awarded in an action at law therefor. The court predicated the decision on the theory that the plaintiff would be compelled to sue "for every time the defendants landed, and the burden of carrying on such a multiplicity of suits would make his remedy about as grievous as the injury," and therefore held that the suit at law would not be an ade-

quate remedy.  [See also State Sav. Bank v. Kercheval, 65 Mo. 682; Towne v. Bowers, 81 Mo. 491; Jones v. Williams, 139 Mo. 1.]

The Supreme Court of the United States in City of Georgetown v. Alexandria Canal Co., 12 Peters 91-98, in treating this subject in reference to a public nuisance, said: "Besides this remedy at law, it is now settled that a court of equity may take jurisdiction in cases of public nuisances by information filed by the attorney-general. . . . The jurisdiction has been finally sustained upon the principle that equity can give more adequate and complete relief than can be obtained at law." [See also In Re Debs, 158 U. S. 565; Attorney-General v. Jamaica Pond, etc., Co., 133 Mass. 361; Columbian Athletic Club v. State ex rel. McMahon, 143 Ind. 98, and authorities cited in the several cases.]

It seems that the principle recognized by the courts in making this seeming exception to the rule that equity will not interfere by injunction where an adequate remedy at law exists, is such that it is not an exception to the rule at all, but on the contrary, is treated as one requiring the remedy to be full, adequate and complete and in such case, where there may be a remedy at law, but it is not full, comprehensive, adequate and complete, so as to be an adequate remedy, a court of chancery will intervene by injunction on the ground that it can afford a more complete and adequate remedy than a court of law can furnish, bound and tied down as our courts of law are, to certain forms of remedies and procedure, which they are not capable of molding and adapting to the necessities of the particular case.  This seems to be the controlling principle recognized by our Supreme Court in Turner v. Stewart, 78 Mo. 480, supra, the steamboat landing case referred to, for it is obvious that it was one of trespass, and that a remedy at law for damages existed which brought it within the pale of the statute noted above.  Notwithstanding this fact, however, the court proceeded to administer the re-

lief prayed for in the face of the existing remedy at law for damages on the theory that such remedy was not adequate. The principle recognized clearly was that the remedy by injunction could give more adequate and complete relief than could be obtained at law. [16 Amer. & Eng. Ency. Law (2 Ed.), 352-3-4-5.] Therefore, it has been said by the Supreme Court of Massachusetts in Attorney-General v. Jamaica Pond, etc., Co., 133 Mass. 363: "Cases are numerous in which it has been held that the attorney-general may maintain an information in equity to restrain a corporation, exercising the right of eminent domain, under a power delegated to it by the Legislature, from any abuse or perversion of the powers, which might create a public nuisance or injuriously affect or endanger public interests." [Citing Agar v. Regents Canal Co., Coop. Temp. Eldon, 77; Attorney-General v. Great Northern Railroad Co., 1 Dr. & Sm. 154; Attorney-General v. Mid-Kent Railroad Co., L. R. 3 Ch. 100; Attorney-General v. Leeds Corp., L. R. 5 Ch. 583; Attorney-General v. Great Eastern Railroad Co., 11 Ch. d. 449; Attorney-General v. Great Northern Railroad Co., 4 DeG. & Sm. 75; Attorney-General v. Cohoes Co., 6 Paige 133.]

We are persuaded, on the principle that equity could afford a more ample and complete remedy in the case at bar, that this proceeding by injunction is proper and is not precluded by the existence of the remedy by quo warranto. If the collection of the tolls was a nuisance, maintained in the public highway, then it was the right of the public to have such nuisance abated or restrained forthwith and it was the duty of the State in its sovereign capacity to institute such proceeding in that behalf as would render to its citizen immediate reinstatement of a free and unincumbered highway. A proceeding by quo warranto would have been of a tedious nature where the relief sought could only be adjusted upon a final determination of the cause, whereas a proceeding by injunction would afford immediate and

adequate relief inasmuch as the restraining order of the court could be had forthwith, and the otherwise constant and recurring nuisance be thereby abated during the pendency of the suit—the ultimate result being the same in either proceeding. And indeed, the daily practice of unlawfully exacting tolls from those persons using the road was a standing and continuing infringement of their rights, which could be immediately relieved only by the extraordinary process of injunction, and upon each successive exaction of toll, a right of action arose in favor of the person who was required to pay the same against those persons so unlawfully exacting it, which could be adjusted between the parties only by a multiplicity of suits at law. The general policy of the law and the inclination of the courts to contribute to whatever is conducive to the peace and repose of society in preventing a multiplicity of suits, argues forcibly in favor of, not only the power, but the duty as well of a court of conscience to interpose its salutary relief in such circumstances even though the right to proceed by quo warranto existed as well. Be this as it may, however, as said before, the case of State ex rel. v. Gravel Road Co. supra, decided by our Supreme Court, is authority sufficient for us to sustain this proceeding. [See also People ex rel. v. Newburge etc. Plank Road Co., 86 .N. Y. 1.] And we would entertain it under that authority and the constitutional mandate, even though we were of opinion that it ought not be so entertained. We have noticed the question of the power of a court of equity to interfere in a case of this nature by injunction, solely on the ground of principle, in view of the fact that it was not discussed in that case.

Entertaining the views hereinbefore expressed, it becomes our duty to examine and dispose of the merits of the controversy as found in the record before us.

4. It will be observed that after much matter of inducement, the gravamen of the petition is reached and thereby it is alleged "that upon the expiration of the

charter rights of such company (March 20, 1892) the said roadbed so laid out and constructed, reverted and became vested in the public as an easement and thereupon the public became entitled to use the same, divested of tolls and to travel over the same without hindrance or molestation; that thereafter, to-wit, on or about the ———— day of ————, A. D. 1893, the said defendants took possession of said roadbed and the tollhouses which had been erected along said road and unlawfully demanded and collected toll from persons passing over said road and ever since so taking possession of said road, up to the present time, have demanded and collected and are still demanding and collecting tolls of persons passing over said road." Here we find a positive and pointed allegation to the effect that the road, a right to which was vested in the public absolutely free and disburthened, of all tolls or other incumbrance to its free use and occupation by the public, was taken into possession by the defendants and tolls exacted from the public for the user which belonged to it as a matter of common right. It is fundamental that every citizen has a right to the legitimate use of the public highway, free of charge and any obstruction not authorized by law, which denies or abridges or incumbers this right of all of the people is a public nuisance. [ 1 Wood on Nuisances (3 Ed.), sec. 248, also sec. 71; 21 Amer. & Eng. Ency. Law (2 Ed.), 683-684; Commings v. City of St. Louis, 90 Mo. 259.] And it has been expressly decided in this State that the unauthorized exaction of tolls on the public highway is such a public nuisance. [State ex rel. v. Gravel Road Co., 138 Mo. 382.]

5. Injunction is a proper remedy to restrain the commission or continuance of a nuisance. The jurisdiction is said to be founded upon the ability of equity to prevent irreparable mischief and vexatious litigation and to furnish a more complete remedy than can be had at law. [29 Amer. & Eng. Ency. Law (2 Ed.), sec. 703; 1 High on Injunctions (3 Ed.), sec. 739; 2 Wood on Nui-

sances (3 Ed.), sec. 777; State ex rel. v. Gravel Road Co., 138 Mo. 332; McKinney v. Northcutt, 114 Mo. App. 146, 89 S. W. 351; and authorities supra. And in a case such as this, where the nuisance is of a public nature, it is proper for the prosecuting attorney of the county to institute the suit *ex relatione*. [State ex rel. v. Gravel Road Co., 138 Mo. 332; 21 Amer. & Eng. Ency Law, (2 Ed.), sec. 708; 2 Wood on Nuisances (2 Ed.), sec. 819; Bliss on Code Plead. (3 Ed.), sec. 31; 2 High on Injunctions (3 Ed.), sec. 1554, and authorities supra.]

6. From the act of the Legislature approved Feb. 27, 1851, Laws of Missouri, 1850-1851, 403, introduced in evidence under which the original gravel road company was organized, it appears that there was a failure to provide any specific duration of the charter franchises thereof, but said act did provide that the company "may have continued succession." The consolidated act of March 20, 1872, Laws of Mo., 1871 and 1872, 227, which was read in evidence, also failed to make any specific provision as to the duration of the charter rights, but proveided that the corporation "by that name and style, may have continued succession." Sec. 1, ch. 34, R. S. 1845, which was in force at the time when the act of 1851 became a law, provides that every corporation shall have succession by its corporate name for the period of twenty years. R. S. Mo. 1865, ch. 62, in force at the date of the consolidated act of 1872, provided among other things, that when no limitation was prescribed by the charter of the corporation, succession should continue for twenty years only. It is quite evident that the original company, as well as the present defendant, who attempted to purchase the property rights and franchises of the old companies, construed the words "continued succession" contained in the acts of both 1851 and 1872, supra, to confer upon the companies, perpetual corporate rights and franchises, and the case of Fairchild v. Masonic Assn., 71 Mo. 226, sup-

ported this construction. No doubt it was on this construction that defendants attempted to purchase the rights and property of the old companies from the bank and J. M. True ,who had acquired title thereto by mesne conveyances in virtue of the judgment sale under the act of March 12, 1859. This construction, however, is not tenable under more recent decisions of our Supreme Court. In State ex rel. v. Payne, 129 Mo. 468, the court most carefully reviewed the question disapproved the prior ruling in Fairchild v. Masonic Assn., supra, and held that the terms "perpetual succession" meant, only the capacity of succession for a period limited in the charter or a period fixed by the general statutes in force at the time, which was twenty years. [Statute supra.] The same doctrine was announced and recognized in State ex rel. v. Gravel Road Co., 138 Mo. 332, and of course the same rule would obtain as to the words "continued succession" employed in the Acts of 1851 and 1872, and in the latter case, it was also held that such rights should be measured from the date of the acts of the assembly in reincorporating the company there involved, which in this case, would mean that the twenty year period should be measured from March 20, 1872, the date of the passage of the consolidated act, supra. Therefore the trial court was correct in holding that the charter rights and franchises of the old companies expired March 20, 1892 by virtue of the twenty-year limit and the general statutes referred to, supra. From this it follows that the conveyance of date February 21, 1893, whereby the bank and J. M. True attempted to convey such rights to Broadhead and his associates, was of no force insofar as it attempted to convey the roadbed and franchises for the reason that these had vested in the public at the expiration of the charter rights of the old company on March 20, 1892. [State ex rel. v. Gravel Road Co., 138 Mo. 332.] And the subsequent conveyance from Broadhead and his associated to the new company was of no force to convey

the roadbed and the franchises of the old company, and it therefore appears that these appellants had no right to exact tolls on the road unless the charter of the new company conferred such right. This charter conferred the right to build and own a gravel road, but it did not and could not authorize them to take possession of the old road. They could only acquire this right from the county court under the statute supra.

Mr. Broadhead and his associates, after having obtained the conveyance mentioned, applied to the county court and obtained the permission for themselves or a corporation to be thereafter organized, contained in the statement supra, to construct an electric railway over and along the right of way of the old gravel road. This electric road was never constructed, nor was a company for that purpose ever organized so far as the record discloses. Afterwards, however, Broadhead and his associates did organize the defendant corporation under the provisions of the general statutes of 1898, now art. 5, chap. 12, R. S. 1899, for the purpose of constructing, owning and controlling a gravel road along the line of the old gravel road between Louisiana and Ashley, via Bowling Green, and by deed conveyed to the new company whatever rights they had obtained from the Bank and True under the deed heretofore mentioned, which as before stated, was of no force so far as the roadbed and franchises were concerned. Having organized the new company for the purposes mentioned, inasmuch as the old road had reverted to the county March 20, 1892, on the expiration of the charter of the old company, the next step incumbent on the new company and its promoters was to apply for and obtain the consent of the county court to locate their proposed road over or upon the State or county road or highway, as was provided by the then sec. 2697, R. S. 1889, now sec. 1227, R. S. 1899, art. 5, chap. 12 supra, for "thereupon" it is said by said section, "such State or county road or highway or such portion thereof as may be occupied and appropriated by

such company, shall become the property of such company for the purpose of making and maintaining said road and the gates and tollhouses thereon." This they failed to do; but nevertheless entered upon and took possession of the old road and proceeded to exercise the franchise of collecting tolls without first obtaining the consent of the competent authority therefor. This rendered the act of collecting tolls an unlawful interference with the free use of the highway by the public which constituted a public nuisance. [State ex rel. v. Gravel Road Co., 138 Mo. 332.]

The appellants, however, argue that the consent of the county court to Mr. Broadhead and his associates and to the corporation to be organized by them to construct the road mentioned, was first, a sufficient grant of right to operate the gravel road in question. This position cannot be maintained on reason or authority and will therefore not be discussed. Second, it is argued that inasmuch as the county court in the order authorizing the partial occupation of the gravel road by the proposed railroad employed the following words: "provided that the same shall be in all respects so constructed and operated as to obstruct and interfere as little as possible with the use of the present road, as now constructed, subject to the rights and interests of the person or corporation who now or hereafter may own and operate said gravel or macadamized road," that this was a recognition of the right of these appellants to the road and a disaffirmance by the county of rights therein. The wording of this order was no doubt predicated upon the then prevalent notion that the words "continued succession" contained in the acts of 1851 and 1852, supra, together with the decision of the Supreme Court in Fairchild v. Masonic Assn., supra, conferred upon the successive companies perpetual succession and rights in the road and franchises. Whatever the notion was, the grant contained in the order of the county court was to build a railroad in the highway, and the county court,

was enforcing its proper function in throwing around that grant, proper safeguards to preserve the road as a public highway for the use of the public. The universal rule is, that in construing public grants, their language should be construed strictly in favor of the public who is the grantor. and against the grantee. Nothing passes by implication except that which is necessary to the enjoyment of that which is expressly granted. [4 Thompson, Private Corp., sec. 5345.] This rule proceeds upon the theory that those who are praying the grant or franchise usually know what they want and manage to obtain it in the most liberal language that the grantor may be induced to employ in conferring the right. Applying this rule, then, to these facts, it appears that the grantees were seeking a grant to construct a railroad and obtained it, and that while conferring this grant, the county court had principally in mind and intended to confer the right prayed for and no more, and at the same time, exercise their high duty of protecting the public right to the use of the highway and it was ordered that whoever might have a right to the road, the right of the public must be protected and the road impaired as slightly as possible in exercising the rights granted. Viewing the matter from this standpoint, we are not impressed with the argument that the county court recognized the rights of these appellants to collect tolls so as to estop the public in this proceeding. But it is argued that the appellants expended moneys upon the road and therefore the county is estopped. Nothing appears in the record tending to show that the appellants expended moneys upon the faith of this order of the county court or that they were encouraged to forfeit any right or assume any burden on account of such order. The order pertained to a different and distinct subject-matter entirely and the rights here involved were not those under consideration and in view of the rule announced supra, the court cannot treat them by construction as being considered and

thereby estops the county. The fact is, appellant collected the tolls and while so doing, maintained the road. We can see no action on the part of the authorities of Pike county which would operate as an estoppel in this case and therefore this defense is ruled against appellants.

7. It is finally insisted that the petition failed to state a cause of action for the reason that it did not affirmatively charge that appellants were occupying the road without an order of the county court. We are not impressed with this contention. The petition alleges a public highway, unincumbered by tolls, the right of free use, by the public and the unlawful nuisance. This was sufficient. The only defense that could be made was a permissive leave and license from the court under the statute supra, and the burden was on appellant to plead and prove it. [City of St. Louis v. Howard, 119 Mo. 47; 1 Amer. & Eng. Ency. Law (2 Ed.), 841.]

Our conclusion is that the case was well and carefully tried and the learned trial judge committed no error in decreeing perpetual injunction. The judgment will therefore be affirmed. It is so ordered. *Bland, P. J.,* and *Goode, J.,* concur.